[Cite as *Premier v. Premier*, 2016-Ohio-673.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| GARY PREMIER | : | Hon. Sheila G. Farmer, J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellant | : | Hon. John W. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2015CA00030 |
| NICOLE PREMIER | : |  |
|  | : |  |
| Defendant-Appellee | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Civil appeal from the Stark County Court of Common Pleas, Domestic Relations Division, Case No. 2012DR00311

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      February 22, 2016

APPEARANCES:

For Plaintiff-Appellant

DOUGLAS BOND
MORELLO & BOND, LTD
700 Courtyard Centre
116 Cleveland Avenue N.W.
Canton, OH 44702

For Defendant-Appellee

GREGORY RUFO
Suite 401, Crescent Bldg.
4774 Munson Street N.W.
Canton, OH 44718

*Gwin, J.,*

{¶1} Appellant appeals the November 12, 2014 judgment entry of the Stark County Common Pleas Court, Domestic Relations Division, overruling his objections to the magistrate's decision.

*Facts & Procedural History*

{¶2} Appellant Gary Premier ("Father") filed a complaint for divorce against appellee Nicole Premier ("Mother") on March 13, 2012. The trial court issued a judgment entry and decree of divorce on December 3, 2012. The parties agreed that Mother would be the custodial parent of the parties' two children, A.P., born October 20, 1998 and K.P., born August 23, 2004. Father had parenting time with the children weekly to accommodate his work schedule. The trial court also ordered the children to continue counseling.

{¶3} In the findings of fact in the divorce decree, the trial court found the marital residence was in foreclosure. Further, that the residence had been in Father's family since it was built and Father wanted to save the property from foreclosure if possible. The divorce decree provides as follows: "Husband is to receive the marital residence free and clear of any claim by Mother so long as he refinances within nine months and removes her from the mortgage." The trial court found the total division of property was not equal. Thus, to equalize the property division, the trial court ordered Father to pay Mother $1,544.

{¶4} In June of 2013, Father filed a motion for reallocation of parental rights and to enforce the property division. In August of 2013, Mother filed a motion to modify the

order as to parental rights. On April 11, 2014, the trial court issued a judgment entry dismissing, without prejudice, all outstanding motions by agreement of the parties.

{¶5} On May 1, 2014, Father filed a motion for relief from judgment pursuant to Civil Rule 60(B)(4) and (5) with regard to the equitable distribution of the property. Father asserted he was assessed a tax obligation due to a deficiency in the sale of the residence and thus the property distribution was not equitable.

{¶6} Father also filed a motion for reallocation of parental rights and responsibilities alleging there was a change of circumstances because Mother continuously encumbered his ability to maintain his relationship with his children. Mother filed a motion to dismiss Father's motion for reallocation of parental rights and motion for relief from judgment and argued there was no change of circumstances since the divorce decree. Further, that Father failed to meet the requirements for a Civil Rule 60(B)(4) or (5) motion.

{¶7} On July 14, 2014, Father filed an amended motion for reallocation of parental rights and responsibilities. Father alleged that: Mother moved the children out of the martial residence at the last minute; the children were homeless; Mother had dated several different men; Mother was banned from the counselor's office due to her behavior; and Mother allowed the children not to attend school, affecting their grades.

{¶8} A magistrate held an evidentiary hearing on Father's motions on August 27, 2014. The magistrate bifurcated the action on change of circumstances and best interest, first conducting the evidentiary hearing on change of circumstances and the motion for relief from judgment.

{¶9} Frederick Snowden ("Snowden"), a tax professional, testified the form Father received from the IRS regarding the taxes for cancellation of debt would have been received by Father in early 2014, with it being sent, at the latest, on January 31, 2014. Further, that in every foreclosure there is generally a tax consequence.

{¶10} Scarlet Rue ("Rue"), the owner of the Building Blocks Counseling Center and licensed clinical counselor supervisor testified the children have been seeing Lara DiSabato ("DiSabato"), a different counselor in the practice. Rue oversees any questions DiSabato has and any ethical concerns she is concerned about. Rue does not monitor or look at DiSabato's charts. Rue has seen both Mother and Father in the waiting room at counseling and once saw Mother listening at the door of the counseling session. Rue stated neither parent is allowed in the counseling session with the children and the counselor has not allowed phone calls from Mother. Rue testified this could be disruptive, depending upon the situation. The magistrate sustained an objection on Rue's opinion as to whether Mother is disruptive to counseling since she was not the counselor of the children and the question did not relate to any question or ethical concerns DiSabato had.

{¶11} Melissa Pitinii ("Pitinii"), the children's guardian ad litem, testified the children are getting emotionally better through counseling as time passes. Pitinii does not believe either parent has done anything to interfere with the companionship time of the other. She is not aware of any disruption of parenting time except for a few hours on Father's Day, but she does not believe the children suffered any emotional trauma from that incident. Father told Pitinii Mother's paramours were spending the night, but Pitinii did not discuss that with the children, nor did the children tell her anything about Mother's paramours spending the night.

{¶12} With regards to the move, Pitinii stated it happened quickly for the children. Pitinii is not sure the children had a clear understanding of what was going to happen. Pitinii testified there were no psychological problems with the children due to the move outside the couple of days before and after the move. Pitinii stated the children were not homeless and the move did not result in severe emotional trauma to the children. Pitinii testified the trial court was aware of the foreclosure of the marital home at the time of the divorce decree.

{¶13} Pitinii testified she has no concerns about the children's attendance at school and the children was doing well in school. Further, the employment situation of the parents has not changed since the time of the divorce decree. Pitinii stated the problems the children had and have are with dealing with both parents and with their parents fighting. The children blame both parents equally. Pitinii testified no one incident has traumatized the children, but the way their parents have behaved is upsetting to them and they have to deal with their parents' behavior instead of being children.

{¶14} Father testified the children were homeless because when they left the martial home, they did not move into their new home and did not know where they were going. Father stated the children were very upset by the move. Mother never told Father where or when she was moving and did not give him the new address information for one week. Father stated on Father's Day 2013, Mother was 1.5 hours late for the visit with him and the children were upset. Further, Mother scheduled vacation with less than the sixty (60) day required notice. Father testified he knew in May of 2013 he was not going to refinance the marital property and let the foreclosure proceed.

{¶15} Father testified he saw his son driving at Belden Village during the school day with his grandmother. On cross-examination, Father stated he had no information from the teacher or a report to indicate his son's lower grade was due to absence. Father agreed the school records show A.P. was absent four days and tardy one day for the year.

{¶16} Mother testified she did not leave the martial home for several months because she did not think she had to leave prior to the house being foreclosed upon. Mother stated she and the children looked at multiple houses. She bought a foreclosed home and there were complications such that it was several months until they could move into the new home. Mother testified the children saw the house she was buying and knew where they were going. She and the children stayed at her mother's house for approximately one week between the time they moved out of the marital home and into the new home. Mother stated the children were upset to leave the marital home, but were not traumatized. Mother testified the children were never homeless.

{¶17} Mother testified she has dated two people since the divorce decree in December of 2012. The one paramour met the children six to eight months after they started dating and Mother stated there was no distraction to the children's lives. The second paramour Mother met through the children's activities and there was no visible stress to the children when she began dating him. Mother was not informed she was banned from the counselor's office. Mother testified she had not allowed the children to miss school without a proper reason. Mother stated in 2013 she gave Father forty-two days' notice of vacation instead of sixty days' notice. Mother admitted on Father's Day 2013, she overslept and thus the children were late to visitation with Father. Mother

stated it was her fault and she gave Father more hours that night to make up for being late in the morning.

{¶18} The magistrate issued a decision on September 10, 2014. The magistrate detailed findings as to each of Father's assertions for change of circumstances. The magistrate did not find Father's assertion about the children being traumatized from an abrupt move or that they were homeless to be true. Further, Father did not miss any companionship time due to Mother's delay of one week in providing him with her address. As to Mother's boyfriends, the magistrate found, based upon the testimony of the guardian ad litem, that the children did not like the boyfriends or Father's new wife. The magistrate also noted the guardian ad litem's testimony that the parents have always behaved badly towards each other and the conflict still exists. However, the children are doing better over time with counseling. Further, the magistrate cited the guardian ad litem's testimony that no one event has had a harmful effect on the children.

{¶19} The magistrate found no change of circumstances pursuant to R.C. 3109.04(E)(1)(a). The magistrate stated the children had to move out of the marital residence, but this was known at the time of the divorce decree. Further, that minimum parenting time disputes did not result in the interference with Father's parenting time and was insufficient to constitute change of circumstances.

{¶20} As to Father's motion for relief from judgment, the magistrate found Father did not present a meritorious claim or defense because the award of the marital residence was awarded to Father and the award of $1,544 to Mother was an equal division of the assets. Further, at the time of the divorce decree, both parties knew the house was in foreclosure and anyone going through a foreclosure would have tax consequences. The

magistrate also found Father did not bring his motion within a reasonable time since he knew in May of 2013 he was not going to refinance the property. The magistrate denied Father's motion for relief from judgment.

{¶21} Father filed objections to the magistrate's decisions on September 24, 2014 and supplemental objections on November 5, 2014. Father argued the magistrate erred in: failing to consider cumulative evidence of change of circumstances; wrongly limiting the guardian ad litem's testimony; refusing to vacate the judgment; overlooking the testimony about the move affecting the children; and in limiting Rue's testimony.

{¶22} The trial court held a hearing on Father's objections on November 12, 2014. On November 12, 2014, the trial court issued a judgment entry approving and adopting the magistrate's decision. On January 23, 2015, the trial court issued a judgment entry dealing with the balance of Father's motions with regard to spousal support and child support.

{¶23} Father appeals the November 12, 2014 judgment entry of the Stark County Court of Common Pleas and assigns the following as error:

{¶24} "I. THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO FIND A CHANGE IN CIRCUMSTANCES HAD OCCURRED BECAUSE IT FAILED TO CONSIDER THE TOTALITY OF THE CIRCUMSTANCES AND INSTEAD IT IMPROPERLY CONSIDERED EACH CHANGE INDIVIDUALLY.

{¶25} "II. THE TRIAL COURT ABUSED ITS DISCRETION BY LIMITING THE GUARDIAN AD LITEM'S TESTIMONY REGARDING HER OPINION REGARDING THE CHANGE OF CIRCUMSTANCES.

{¶26} "III. THE TRIAL COURT ABUSED ITS DISCRETION BY LIMITING THE TESTIMONY OF SCARLET RUE, THE OWNER AND SUPERVISING THERAPIST, REGARDING THE INFORMATION AND OBSERVATIONS OF A THERAPIST WHO WAS WORKING UNDER HER SUPERVISION.

{¶27} "IV. THE TRIAL COURT'S DENIAL OF THE MOTION FOR RELIEF FROM JUDGMENT IS CONTRARY TO LAW AS THE ORIGINAL DIVISION OF PROPERTY IS INEQUITABLE."

I.

{¶28} In his first assignment of error, Father argues the trial court erred in finding there was no change of circumstances.

{¶29} Our standard of review in assessing the disposition of child custody matters is that of abuse of discretion. *Miller v. Miller*, 37 Ohio St.3d 71, 523 N.E.2d 846 (1988). Furthermore, as an appellate court reviewing evidence in custody matters, we do not function as fact finders; we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base his or her judgment. *Dinger v. Dinger*, 5th Dist. Stark No. 2001 CA 00039, 2001-Ohio-1386. The trial court is "best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). Deferential review in a child custody determination is especially crucial "where there may be much evident by the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997).

{¶30}  R.C. 3109.04(E)(1)(a) provides as follows:

The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent * * * and that the modification is necessary to serve the best interest of the child.   In applying these standards, the court shall retain the residential parent designated by the prior decree * * *, unless a modification is in the best interest of the child and one of the following applies * * * (iii) the harm likely to be caused by a change in environment is outweighed by the advantages of the change of environment to the child.

{¶31}  Thus, a trial court will not have to reach the best interest analysis if a change of circumstances is not found.  *Noe v. Noe*, 5th Dist. Ashland No. 14 COA 026, 2015-Ohio-847.  R.C. 3109.04 does not define the concept of "change in circumstances." However, Ohio courts have held the phrase is intended to denote "an event, occurrence, or situation which has a material and adverse effect upon a child."  *Wyss v. Wyss*, 3 Ohio App.3d 412, 445 N.E.2d 1153 (10th Dist. 1982).  A trial court "must carefully consider the nature, circumstances, and effects of each purported change, such as growth and improvement (excepting some measure of mistakes along the way) should be fostered rather than blindly chilled or penalized in the name of stability."  *Murphy v. Murphy*, 5th Dist. Tuscarawas No. 2014 AP 01 0002, 2014-Ohio-4020.

**{¶32}** Additionally the change of circumstances must be "one of substance, not a slight or inconsequential change." *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997). This prevents a constant re-litigation of the issues that have already been determined by a trial court. *Id.* The change in circumstances "must be based upon some fact that has arisen since the prior order or was unknown at the time of the prior order." *Brammer v. Brammer*, 194 Ohio App.3d 240, 2011-Ohio-2610, 955 N.E.2d 453 (3rd Dist.).

**{¶33}** Father alleges the trial court failed to consider the totality of the circumstances with regards to the change in circumstances and instead considered each change alleged by Father individually. Further, that the trial court's determination was against the manifest weight of the evidence because there was a change of circumstances regarding: the parents' failure to work together and properly communicate; interference with visitation; change of residence and homelessness of the children; and school performance of the children. We disagree with appellant.

**{¶34}** In the decision, the magistrate went through each prong of Father's motion as to change in circumstances in accordance with R.C. 3109.04(E)(1)(a) and with the directive that it "must carefully consider the nature, circumstances, and effects of each purported change." *Murphy v. Murphy*, 5th Dist. Tuscarawas No. 2014 AP 01 002, 2014-Ohio-4020. The magistrate analyzed each circumstance listed and determined: Father's assertion about the children being homeless and having undue stress due to the move was not credible; the move was known by the parties at the time of the divorce decree; the minimal parenting time disputes did not result in the interference with Father's parenting time; and there was no change in the children's school circumstances. The magistrate concluded there was no change of circumstances. Though Father argues the

magistrate's findings as to each of his alleged change means the magistrate did not consider the totality of the circumstances, it is clear from the record and the magistrate's decision that the magistrate did consider all of the circumstances at issue, found several of these circumstances to be "known" to the trial court at the time of the divorce decree, and did not find the circumstances, singularly or together, constituted a change of circumstances.

{¶35} With regards to Father's argument about the move, the plain language of the divorce decree demonstrates that both parties knew the children were going to move out of the marital home, as did the trial court, at the time of the divorce decree. Pitinii testified the trial court was aware of the foreclosure of the marital home at the time of the divorce decree. Accordingly, this alleged circumstance was not "unknown to the court at the time of the prior decree." R.C. 3109.4(E)(1)(a). Further, "since a child almost is almost always going to be harmed to some extent by being moved, the non-custodial parent should not be able to satisfy his or her burden by simply showing that s*ome* harm will result; the amount of harm must transcend the normal and expected problems of adjustment." *Noe v.* Noe, 5th Dist. Ashland No. 14 COA 026, 2015-Ohio-847. Pitinii testified there was no severe emotional trauma to the children due to the move. Despite Father's contention, the testimony of both Mother and Pitinii reflects that the children were not homeless and stayed with their grandmother for approximately a week. It is well-established that the trial court, as the fact finder, is free to believe all, part, or none of the testimony of each witness. *Hrabovsky v. Axley*, 5th Dist. Stark No. 2013CA00156, 2014-Ohio-1168.

{¶36} Father contends Pitinii's report contained evidence of change of circumstance that the trial court failed to consider as to the parents' failure to work together and properly communicate. However, it is clear the magistrate did take this issue into consideration. The magistrate specifically cited to the portion of Pitinii's testimony wherein she stated that the parents have always behaved badly towards each other and this conflict still exists, making it difficult for the children to truly be children when dealing with their parents' issues; however, the children are doing better over time with counseling. Thus, the parents' failure to communicate and their conflict has existed since their separation and has not arisen since the prior decree, nor was this conflict unknown to the trial court at the outset. The testimony by Pitinii demonstrates the children are actually doing better dealing with their parents' continued communication and conflict issues since the divorce decree through counseling.

{¶37} Father finally argues the trial court erred in determining that neither Mother's interference with visitation nor the change in the child's school performance were changes in circumstances. The evidence establishes that Mother was late for one visitation by 1.5 hours and once gave Father forty-two (42) days' notice of vacation rather than 60 days' notice of vacation. Further, though Father testified he saw his son driving around at Belden Village once during the school day, he also stated he had no information from the teacher or a report to indicate his son's lower grade was due to absence. Further, Father agreed school records show his son was absent four days and tardy one day for the school year. Pitinii testified she has no concerns about the children's attendance at school and the children were doing well in school. Based on this testimony, we find the

trial court did not abuse its discretion in determining these did not constitute a change in circumstances.

{¶38} Though Father contends the trial court erred in not finding the combination of events was a change in circumstances, we find the trial court did not abuse its discretion in its determination. Several of the circumstances cited by Father were known to the trial court at the time of the divorce decree and thus were not facts arisen since the decree. Further, upon review, we find it was within the trial court's discretion to determine that nothing rising to the level of a material and adverse occurrence or occurrences impacting the children was demonstrated for purposes of finding a change in circumstances under R.C. 3109.04(E)(a)(a).

{¶39} Father's first assignment of error is overruled.

II.

{¶40} Father contends the trial court erred in limiting Pitinii's testimony regarding her opinion as to whether a change of circumstance existed. We disagree.

{¶41} A trial court possesses broad discretion with respect to the admission of evidence and an appellate court will not disturb evidentiary rulings absent an abuse of discretion. *State v. Roberts*, 156 Ohio App.3d 352, 2004-Ohio-962, 805 N.E.2d 594 (9th Dist.). The role of a guardian ad litem is to advocate for the child's best interests and is not aligned with any party on the legal issues presented. *In re Seitz*, 11th Dist. Trumbull No. 2002-T-0097, 2003-Ohio-5218.

{¶42} The only question the trial court would not permit Pitinii to answer is whether she believed a change of circumstances existed from the time of the divorce decree. The trial court allowed Pitinii to testify fully about her investigation and all factual issues

surrounding the allegations made by Father as the basis for the change in circumstances and further allowed her to testify as to whether the children were harmed or traumatized by the events cited by Father in his motion.

**{¶43}** As detailed in R.C. 3109.04(E)(1)(a), the *court*, not the guardian ad litem, has to make a legal determination from the facts presented on whether a change in circumstances exists. Counsel for Father recognized this distinction when he stated, during his examination of Pitinii, "And I know ultimately your role in this is not to say whether or not a change of circumstances has occurred in … in regards to modifications of allocation of parental rights you would agree with me on that?" Pitinii responded "Yes" to counsel's question. (T. at 38). Further, Pitinii testified that she had no involvement with the children from December of 2012 until August of 2013 and thus could not opine as to change of circumstances during that time. Accordingly, the trial court did not abuse its discretion in not permitting Pitinii to testify to the legal conclusion as to whether there was a change of circumstances. Appellant's second assignment of error is overruled.

III.

**{¶44}** Father argues the trial court abused its discretion by limiting the testimony of Rue regarding the information and observations of a therapist who was working under her supervision. We disagree.

**{¶45}** The admission or exclusion of evidence rests within the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987). A reviewing court must not disturb a trial court's evidentiary ruling unless the ruling is found to be an abuse of discretion. *Id.*

**{¶46}**   In this case, the magistrate sustained an objection when counsel for Father inquired of Rue as to what DiSabato told her about an incident between Mother and DiSabato and Mother's being disruptive to the children's counseling.   The magistrate determined this to be inadmissible hearsay.   Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted" and is not admissible.   Evidence Rule 801(C).

**{¶47}**   We find the trial court did not abuse its discretion with this evidentiary ruling. Rue was not present at the incident alleged by Father between Mother and DiSabato and Rue specifically testified she does not review or monitor DiSabato's charts.   While Rue could testify as to any ethical concerns or concerns about her safety that DiSabato had, the testimony at issue was not related to any ethical concerns or concerns about DiSabato's safety.   Rue could not testify to her discussions with DiSabato about an incident she was not present for when Father sought to present this testimony to prove the truth of his allegation of Mother's disruptive behavior at counseling.   Further, the magistrate permitted Rue to testify about her interactions with Mother and the restrictions that Rue herself placed on Mother due to her interactions with Rue and DiSabato.

**{¶48}**   Father's third assignment of error is overruled.

IV.

**{¶49}**   Father contends in his final assignment of error that the trial court abused its discretion when it denied his motion to vacate.

**{¶50}**   The decision whether to grant a motion for relief from judgment under Civil Rule 60(B) lies within the trial court's sound discretion.   *Griffey v. Rajan*, 33 Ohio St.3d 75, 514 N.E.2d 1122 (1987).   In order to find an abuse of discretion, we must determine

the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

**{¶51}** A party seeking relief from judgment pursuant to Civil Rule 60(B) must show: a meritorious defense or claim to present if relief is granted; entitlement to relief under one of the grounds set forth in Civil Rule 60(B)(1) – (5); and the motion must be timely filed. *GTE Automatic Electric, Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146, 351 N.E.2d 113 (1976). A failure to establish any one of these requirements will cause the motion to be overruled. *Rose Chevrolet v. Adams*, 36 Ohio St.3d 17, 520 N.E.2d 564 (1988).

**{¶52}** A Civil Rule 60(B)(5) motion must be made within a reasonable time. However, the rule does not specify as to what qualifies as a reasonable time. The determination as to what constitutes reasonable time is for the trial court to determine in the exercise of sound discretion. *Claycraft Motors, L.L.C. v. Bulldog Auto Sales, Inc.*, 5th Dist. Fairfield No. 13-CA-70, 2014-Ohio-2086. Even though courts have granted relief from judgment after lengthy delays, it is usually only under unique circumstances. *Harris v. Johnson*, 5th Dist. Perry No. 10 CA 22, 2011-Ohio-3102.

**{¶53}** The trial court found Father's motion for relief from judgment was not brought within a reasonable time. Upon review of the record in light of the evidence presented for the trial court's consideration, we find appellant failed to establish the trial court's conclusion that Father's motion to vacate was made within a reasonable time constituted an abuse of discretion. Father testified that in May of 2013 he knew he was not going to refinance the marital home and let the foreclosure proceed. Snowden testified in every foreclosure, there is generally a tax consequence. Further, though the

testimony reflects that Father received the actual tax bill information in late January or early February of 2014, he did not file his motion until May 1, 2014. Father offers no explanation for this delay.

{¶54} The trial court additionally found Father did now show a meritorious defense or claim to present if relief is granted because the divorce decree contained an equal division of assets. In this case, the original divorce decree specifically provided for the division of property, including the real estate at issue. As noted by the trial court, since the residence had been in Father's family since it was built, Father sought to save the property from foreclosure. Father was awarded the marital residence free and clear of any claim from Mother as long as he refinanced within nine months and removed her from the mortgage. The trial court further found the total division of property was not equal and awarded Mother $1,544 to equalize the property division. Father did not appeal this decision.

{¶55} It is well-established that a Civil Rule 60(B) motion cannot be used as a substitute for an appeal and the doctrine of res judicata applies to such a motion. *Harris v. Anderson*, 109 Ohio St.3d 101, 2006-Ohio-1943, 846 N.E.2d 43. In this case, Father is attempting to utilize Civil Rule 60(B) motion in order to relitigate an issue he failed to appeal in the original divorce decree. Thus, the doctrine of res judicata applies.

{¶56} Further, we find the trial court's determination that Father does not have a meritorious claim or defense not to be an abuse of discretion. The award of the marital residence to Father and the $1,544 to equalize the distribution was not conditioned on refinancing. At the time of the divorce decree, both parties knew the house was in foreclosure. Father chose not to refinance the home and let the foreclosure proceed.

{¶57} Father's fourth assignment of error is overruled.

{¶58} Based on the foregoing, we overrule Father's assignments of error. The November 12, 2014 judgment entry of the Stark County Common Pleas Court, Domestic Relations Division, is affirmed.


By Gwin, J.,

Farmer, P.J., and

Wise, J., concur