[Cite as *Premier v. Premier*, 2019-Ohio-2588.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | JUDGES: |
|---|---|---|
| GARY PREMIER | : | Hon. W. Scott Gwin, P.J. |
| | : | Hon. John W. Wise, J. |
| Plaintiff-Appellant | : | Hon. Patricia A. Delaney, J. |
| | : | |
| -vs- | : | |
| | : | Case No. 2018CA00156 |
| NICOLE PREMIER | : | |
| | : | |
| Defendant-Appellee | : | OPINION |

CHARACTER OF PROCEEDING:     Civil appeal from the Stark County Court of Common Pleas, Domestic Relations Division, Case No. 2012DR00311

JUDGMENT:     Affirmed

DATE OF JUDGMENT ENTRY:     June 26, 2019

APPEARANCES:

For Plaintiff-Appellant

DOUGLAS BOND
600 Courtyard Centre
116 Cleveland Avenue N.W.
Canton, OH 44702

For Defendant-Appellee

GREGORY RUFO
Rufo Law Firm
101 Central Plaza
Suite 600
Canton, OH 44702

*Gwin, P.J.*

{¶1} Appellant appeals the September 25, 2018 judgment entry of the Stark County Common Pleas Court, Domestic Relations Division.

*Facts & Procedural History*

{¶2} Appellant Gary Premier ("Father") filed a complaint for divorce against appellee Nicole Premier ("Mother") on March 13, 2012. The trial court issued a judgment entry and decree of divorce on December 3, 2012. The parties agreed that Mother would be the custodial parent of the parties' two children, A.P., born October 20, 1998 and K.P., born August 23, 2004. Father had parenting time with the children weekly to accommodate his work schedule. The trial court also ordered the children to continue counseling.

{¶3} In May of 2014, Father filed a motion for reallocation of parental rights and responsibilities alleging that there was a change of circumstances because Mother continuously encumbered his ability to maintain his relationship with his children. In July of 2014, Father filed an amended motion for reallocation of parental rights and responsibilities. Father alleged that: Mother moved the children out of the marital residence at the last minute; the children were homeless; Mother had dated several different men; Mother was banned from the counselor's office due to her behavior; and Mother allowed the children not to attend school, affecting their grades. The magistrate found no change of circumstances pursuant to R.C. 3109.04(E)(1)(a). Father filed objections to the magistrate's decision. The trial court overruled Father's objections, adopted, and approved the magistrate's decision. Father appealed to this Court, arguing the trial court erred in finding there was no change of circumstances. In *Premier v.*

*Premier*, 5th Dist. Stark No. 2015CA00030, 2016-Ohio-673, we overruled appellant's assignments of error and found the trial court did not abuse its discretion in finding no change in circumstances.

{¶4} A.P. turned eighteen on October 20, 2016 and graduated from high school in May of 2017.

{¶5} On February 6, 2018, Father filed a motion for reallocation of parental rights and responsibilities with regards to K.P. and alleged that Mother moved from K.P.'s school district and lives a nomadic lifestyle. Mother filed a memorandum in opposition and for sanctions on February 21, 2018. On March 20, 2018, Melissa Pitinii ("Pitinii") was re-appointed as guardian ad litem for K.P.

{¶6} The trial court conducted a hearing on Father's motion on August 20, 2018. Pitinii testified Exhibit 1 is her report and recommendation that was filed on August 13, 2018. In her report, Pitinii states it is in K.P.'s best interest for Mother to remain the residential parent and legal custodian of K.P., but with modification of Father's parenting time as follows: allow Father to pick up K.P. Monday evening at 8:00 p.m. for the start of his parenting time; Father's one week-end per month should begin Friday at 6:00 p.m.; and Father should also have the fourth weekend in the month from Friday at 6:00 p.m. until Sunday at 6:00 p.m. when there are five full week-ends in a month. Pitinii noted that as of June of 2018, Mother lives in a home in Plain Township.

{¶7} Pitinii testified Mother lived with her husband Brian Horning ("Horning") in Canton South in April of 2018, while K.P. went to Oakwood Middle School in Plain Township. Pitinii contacted the school, who told her Mother recently contacted the school to tell them they were living outside of the district but that they were moving back to the

district shortly. Pitinii believes Mother has help transporting K.P. to school from K.P.'s grandmother and maternal aunt. Pitinii does not believe it is concerning for K.P. to ride the bus to and from her grandmother's house.

{¶8} Father and his wife, Gina Premier, showed Pitinii a video showing K.P., who was thirteen years old at the time, driving on a fairly busy road with Mother in the passenger seat and one of K.P.'s friends in the back seat videotaping K.P. driving. Pitinii does not find it appropriate for a parent to allow a thirteen year old to drive a vehicle on a busy street.

{¶9} Pitinii recommends slight modifications to the parenting schedule because Father no longer works midnights and now works the day shift. Pitinii testified Mother and Father are incapable of shared parenting because they cannot share and they barely communicate. While Pitinii believes Mother has made some poor decisions, Pitinii does not think they rise to the level of switching custody.

{¶10} As to K.P. moving out of the school district, Pitinii testified it did not impact K.P. academically, as her grades are fabulous and she is very good student. When Mother was using grandmother's address for the school, Mother and K.P. were spending some nights at the grandmother's house and some nights at Horning's house. Pitinii stated while this was a little hectic, K.P. did not seem to have a problem with it and it certainly did not impact her grades. Pitinii does not think Mother was honest with her about when Mother notified the school about the living situation. While Father expressed his concern to Pitinii about K.P. living out of a bag and not having a spot to call her own, Pitinii stated K.P. was fine with it and it did not bother her. Pitinii testified K.P. doesn't want to upset either one of her parents. Pitinii stated while K.P. is old enough to

understand about the court proceedings, Pitinii does not think K.P. needs to read the pleadings.

{¶11} Pitinii testified she applied the factors in R.C. 3109.04 as part of her analysis and she recommends Mother remain the residential parent, in spite of the concerns raised by Father. Pitinii stated it has never been an issue for Mother to get K.P. to school on time or any other transportation issues. K.P. told Pitinii the driving happened one time and did not happen again. Pitinii testified when the parents are court-involved, it is very stressful for K.P. and K.P. would really just like her parents to quit filing motions. Pitinii stated Mother has never filed a motion to modify. Pitinii testified K.P. just wants to keep both parents happy so there is no more court.

{¶12} While Pitinii thinks the school could have kicked K.P. out if she did not live in the district, her conclusion is that K.P. did not suffer any consequences due to Mother's failure to notify the school of the change in a timely fashion. Pitinii looked at school records to reach this conclusion.

{¶13} Father testified he filed his motion because Mother moved out of Plain Local Schools and moved to Canton South and K.P. was living out of bags and was not prepared for school or life on a daily basis. Father believed this was causing chaos in K.P.'s life. Father testified K.P. was tired when he picked her up, her clothes were wrinkled, her clothes were too small, she left items at the bus stop, and K.P. was sleeping on the couch at her grandmother's house. Father wants to be named residential parent so K.P. would not be kicked out of school. Father does not believe Mother makes good decisions in the interest of K.P.

{¶14} On cross-examination, Father testified K.P. told him she preferred to sleep on the couch at her grandmother's house even though there was a room available to her. Father stated K.P.'s grades have not changed. Father confirmed he informed Mother that he would not agree to her moving out of the Plain Local School District and told her if she was not back in the Plain Local School District by the end of the 2017-2018 school year, he was going to file for residential custody. Father stated Mother is now living in Plain Township.

{¶15} Mother testified K.P. is hard-working, driven, and when her parents come to court, it disturbs K.P.'s life. Mother stated K.P. is an excellent student. Mother married Horning in February of 2018. Mother testified she and Horning purchased a home in Plain Township in May of 2018 and moved in June of 2018. Mother testified that through the end of the 2016 school year, she and K.P. lived in Plain Township. They lived in Canton South with Horning in the summer of 2016 because her house sold faster than his. Their plan was to both sell their homes and purchase a home together in Plain Township, but this did not happen as quickly as Mother would have liked. However, Mother testified K.P. did not appeared disrupted in any way. For a time, Mother and K.P. stayed at grandmother's home with Mother's parents and A.P. Mother and K.P. lived in Canton South for approximately eight months and Mother drove K.P. to school. Mother did not notice this affecting K.P. K.P. never complained and her grades were not impacted. Mother testified she told the school K.P. was living at her grandmother's and they were trying to buy a home in Plain Township. Mother did not notify the school right away because she thought they would have a house. Mother stated they put in many offers on homes. Mother does not believe Father should have an extra week-end if there are five

week-ends in the month.  Mother believes her remaining as residential parent is in the best interest of K.P.

{¶16}  On cross-examination, Mother testified she enrolled K.P. in school as a resident of her grandmother's house in Plain Township.  Mother does not know the ramifications if the school found out K.P. was not living there.  Mother stated she told Father she would move back into grandmother's if that would settle the issues in his motion for reallocation, but Father told her that was not an option.  Mother confirmed she shared court documents with K.P.

{¶17}  On re-direct, Mother testified she understands letting K.P. drive was a mistake, it only happened one time, and has never happened again.  Mother stated it was a bad decision that she made in hopes to cheer K.P. up and Mother regrets it.

{¶18}  Upon request of Mother, the trial court conducted an in-camera interview of K.P.

{¶19}  The trial court issued a judgment entry on Father's motion on September 25, 2018.  The trial court noted Father's allegation of a change in circumstances is based upon two incidents:  Mother permitted K.P. to drive her motor vehicle on a public highway and Mother did not timely notify the school that she temporarily was living out of the school district.  The trial court also stated Father made other minor allegations such as the fact that at her maternal grandmother's house, K.P. has slept on the couch and it is inappropriate for Mother to share with K.P. pleadings Father has filed.

{¶20}  The trial court found that the evidence demonstrates:  Mother married Horning on February 22, 2018; both Mother and Horning sold their respective homes and in May of 2018 purchased a home in the school district K.P. always attended; the driving

and failure to notify the school district were two separate and isolated incidents which have had no ill effects on K.P.'s welfare; the sleeping on the couch does not seem to have had any adverse impact on K.P.'s health or in her school accomplishments and grades; while sharing the pleadings with K.P. is ill-advised, it would be impossible for K.P. not to be aware of Father's pleadings when she is made subject to conferences with the GAL and the court; K.P. loves both parents; during her in-camera interview and during her conference with the GAL, K.P. expressed a strong desire that the continuing course of litigation be terminated; K.P. wants to spend time with each parent; K.P. is happy in each home and has adjusted well to the two separate homes, step-parents, and children of the step-parents; K.P. does very well in school in spite of the conflict between Mother and Father; and the conflict has not had a lasting ill effect on K.P.

{¶21} The trial court stated it considered all the evidence presented, considered the contents of R.C. 3109.04, and concluded it is in K.P.'s best interest that Mother remain K.P.'s residential parent and residential parent for school purposes. However, the trial court made the following modifications to Father's parenting time and found Father should have parenting time: from Monday at 8:00 p.m. to Thursday at 6:00 p.m.; one weekend per month as agreed by the parties from 6:00 p.m. Friday to 6:00 p.m. Sunday; and when there are five full weekends in a month, on the fourth weekend of the month from Friday at 6:00 p.m. to Sunday at 6:00 p.m.

{¶22} Father appeals the September 25, 2018 judgment entry of the Stark County Court of Common Pleas, Domestic Relations Division, and assigns the following as error:

{¶23} "I. THE TRIAL COURT ABUSED ITS DISCRETION IN DETERMINING THAT THE CHANGES IN CIRCUMSTANCES DID NOT WARRANT A MODIFICATION OF CUSTODIAL AND RESIDENTIAL PARENT OF THE MINOR CHILD.

{¶24} "II. THE TRIAL COURT ABUSED ITS DISCRETION IN DETERMINING THAT MODIFICATION OF CUSTODIAL AND RESIDENTIAL [PARENT] WAS NOT IN THE BEST INTERESTS OF THE CHILD CONSIDERING APPELLEE'S POOR PARENTING DECISIONS."

*Standard of Review*

{¶25} Our standard of review in assessing the disposition of child custody matters is that of abuse of discretion. *Miller v. Miller*, 37 Ohio St.3d 71, 523 N.E.2d 846 (1988). Furthermore, as an appellate court reviewing evidence in custody matters, we do not function as fact finders; we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder could base his or her judgment. *Dinger v. Dinger*, 5th Dist. Stark No. 2001 CA 00039, 2001-Ohio-1386. The trial court is "best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proferred testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). Deferential review in a child custody determination is especially crucial "when there may be much evidence by the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997).

I.

{¶26} In his first assignment of error, Father argues the trial court abused its discretion in determining that the changes in circumstances did not warrant a modification.

{¶27} Three elements must exist in order for a trial court to modify a prior decree allocating parental rights and responsibilities: (1) there must be an initial threshold showing of a change in circumstances; (2) if circumstances have changed, the modification of custody must be in the child's best interest; and (3) any harm to the child from a modification of the plan must be outweighed by the advantages of such modification.  R.C. 3109.04(E)(1)(a).

{¶28} R.C. 3109.04(E)(1)(a) provides as follows:

The court shall not modify a prior decree allocating parental rights and responsibilities for the care of child unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent * * * and that the modification is necessary to serve the best interest of the child.  In applying these standards, the court shall retain the residential parent designated by the prior decree * * *, unless a modification is in the best interest of the child and one of the following applies * * * (iii) the harm likely to be caused by a change in environment is outweighed by the advantages of the change of environment to the child.

**{¶29}** R.C. 3109.04 does not define the concept of "change in circumstances." However, Ohio courts have held the phrase is intended to denote "an event, occurrence, or situation which has a material and adverse effect upon a child." *Wyss v. Wyss*, 3 Ohio App.3d 412, 445 N.E.2d 1153 (10th Dist. Franklin 1982). A trial court "must carefully consider the nature, circumstances, and effects of each purported change, such as growth and improvement (excepting some measure of mistakes along the way) should be fostered rather than blindly chilled or penalized in the name of stability." *Murphy v. Murphy*, 5th Dist. Tuscarawas No. 2014 AP 01 0002, 2014-Ohio-4020.

**{¶30}** Additionally, the change of circumstances must be "one of substance, not a slight or inconsequential change." *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997). This prevents a constant re-litigation of the issues that have already been determined by a trial court. *Id.* The change in circumstances "must be based upon some fact that has arisen since the prior order or was unknown at the time of the prior order." *Brammer v. Brammer*, 194 Ohio App.3d 240, 2011-Ohio-2610, 955 N.E.2d 453 (3rd Dist.).

**{¶31}** Father contends the trial court failed to consider the potential risk Mother's poor decision-making posed to K.P.'s well-being when she let her operate a motor vehicle on a busy road and when she moved out of the school district. We disagree. The trial court considered the potential risks these incidents posed, but determined that though they were important, they were two separate, isolated incidents which had no impact on K.P.'s welfare. We find there is relevant, competent, and credible evidence to support the trial court's determination. Pitinii testified that while Mother has made some poor decisions, Pitinii does not think they rise to the level of switching custody. Pitinii stated moving out of the school district did not impact K.P., as her grades are fabulous and she

is a very good student.    Pitinii testified she looked at school records to reach her conclusion that K.P. did not suffer any consequences because Mother did not notify of the school of the change in a timely fashion.    Mother stated K.P. is an excellent student and K.P. did not appear disrupted in any way.    While Father testified he does not believe Mother makes good decisions in the best interest of K.P., it is well-established that the trial court, as the fact finder, is free to believe all, part, or none of the testimony of each witness.    *Hrabovsky v. Axley*, 5th Dist. Stark No. 2013CA00156, 2014-Ohio-1168.

{¶32}    Father's first assignment of error is overruled.

II.

{¶33}    In his second assignment of error, Father contends the trial court abused its discretion in determining modification was not in the best interest of K.P.

{¶34}    If a change of circumstances is established, the trial court must weigh the best interest of the child before modifying a residential-parent designation.    R.C. 3109.04(F), which sets forth the factors a trial court must consider in determining the best interest of the child, provides:

> In determining the best interest of a child pursuant to this section, whether
>
> on an original decree allocating parental rights and responsibilities for the
>
> care of children or a modification of a decree allocating those rights and
>
> responsibilities, the court shall consider all relevant factors, including, but
>
> not limited to:
>
> (a)      The wishes of the child's parents regarding the child's care;
>
> (b)      If the court has interviewed the child in chambers * * * the wishes and
>
> concerns of the child, as expressed to the court;

(c)     The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d)     The child's adjustment to the child's home, school, and community;

(e)     The mental and physical health of all persons involved in the situation;

(f)     The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g)     Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h)     Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child * * *;

(i)     Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j)     Whether either parent has established a residence, or is planning to establish a residence, outside this state.

{¶35} In this case, the trial court concluded it is in K.P.'s best interest that Mother remain K.P.'s residential and custodial parent. We find there is relevant, competent, and credible evidence to support that determination. Mother and Father each want to be

named residential and custodial parent of K.P. K.P. expressed to both Pitinii and the trial court that she is happy in each home, wants to spend time with each parent, has adjusted well to those homes, and adjusted well to the step-parents and children of her step-parents. Particularly, K.P. continually expresses a strong desire that the continuing course of litigation be terminated as when her parents are court-involved, it is very stressful for her. K.P. is happy and comfortable with both of her parents. All the witnesses testified that K.P. is doing well at school and has fabulous grades. Neither Mother nor Father have any mental or physical issues and K.P. is happy, healthy, and well-adjusted. Pitinii believes both parties will follow any future court orders and states communication between the parties is an ongoing concern. While Mother lived outside of the school district for several months, she has lived in Plain Township since June of 2018 and the parties live approximately seven miles apart.

{¶36} Pitinii testified and concluded in her report that it is in the best interest of K.P. for Mother to remain the residential parent and legal custodian of K.P. The isolated incidents Father testified to did not affect K.P. academically and K.P. reported her living situation did not bother her. K.P. suffered no consequences as a result of Mother failing to notify the school of the change in address in a timely fashion. Mother testified K.P. is doing well and the living situation did not impact her. Though Father provided contrary testimony, we defer to the trial court's interpretation and weight of the evidence as it observed first-hand witnesses and their demeanor. *Wright v. Wright*, 5th Dist. Stark No. 2012CA00232, 2013-Ohio-4138.

{¶37} We find no abuse of discretion in the trial court's conclusion it is in the best interest of K.P. that Mother remain the residential and custodial parent of K.P. Father's second assignment of error is overruled.

{¶38} Based on the foregoing, we overrule Father's assignments of error.

{¶39} The September 25, 2018 judgment entry of the Stark County Common Pleas Court, Domestic Relations Division, is affirmed.

By Gwin, P.J.,

Wise, John, J., and

Delaney, J., concurs