DECISION AND JUDGMENT ENTRY
{¶ 1} This is a consolidated appeal from various Jackson County Common Pleas Court judgments concerning the modification of a shared parenting plan which designated Gregory F. Keller, defendant below and appellee herein, the residential parent for his son Gregory F. Keller, Jr.
 {¶ 2} The child's mother, Rose Keller, plaintiff below and appellant herein, assigns the following errors for review:
First Assignment of error:
"The trial court committed prejudicial error by modifying the parties' shared parenting plan and awarding Sole Custody of the parties' child to the father, in that this decision was not supported by the evidence or was contrary to the weight of the evidence."
Second Assignment of error:
"The trial court committed prejudicial error, in that the magistrate abused his discretion by taking the case under advisement at the conclusion of the final hearing, after which he issued a decision one year and three months later."
Third Assignment of error:
"The trial court committed prejudicial error by considering the testimony of persons who were not witnesses in the case."
Fourth Assignment of error:
"The trial court committed prejudicial error by abusing its discretion, in that, after the magistrate had failed to issue a decision for over a year after the final hearing had been concluded, appellee's counsel made ex parte contact with the magistrate and implied that there was some conduct that had occurred between appellant's husband and the parties' child, whereas appellee had no such evidence to support the inferences to be drawn from his Counsel's December 3, 2001 letter."
Fifth Assignment of error:
"the trial court abused its discretion and committed prejudicial error by failing to make a timely ruling upon appellant's January 30, 2002 motion for a new trial/hearing, then denying that motion on January 8, 2003, eleven months after the motion was made, without even granting the appellant a hearing thereon, despite the magistrate's having abused his discretion by delaying his decision for one year and three months after conclusion of the final hearing."
Sixth Assignment of error:
"the trial court committed prejudicial error by permitting its magistrate to issue a nunc pro tunc decision, without authority to do so, without any motion requesting that relief, and without obtaining leave from this court, in which there was a pending appeal, and this error was compounded by the court's overruling appellant's objections to that decision."
Seventh Assignment of error:
"The trial court committed prejudicial error in regard to the in camera interview."
 {¶ 3} The parties married on November 17, 1991 and one child, Gregory F. Keller, Jr. (d/o/b/ 12-30-92), was born as issue of that marriage. On August 16, 1996, the couple filed a joint petition for dissolution of marriage together with a separation agreement and shared parenting plan. The marriage was dissolved a month later, their proposed plans adopted by the court and appellant named the child's residential parent.
 {¶ 4} On January 27, 2000, appellee filed a petition to terminate or to modify the shared parenting plan. In support of his petition, appellee alleged that his ex-wife was living with someone who had been recently "charged with the crime of corruption of a minor" and that she was hindering visitation with his son.
 {¶ 5} The matter was heard by a magistrate over several days in the summer and fall of 2000. There was no genuine issue during the proceeding whether appellant was a capable mother[1] or that she had hindered visitation between the minor child and his father.[2] Instead, the hearing focused primarily on the suitability of appellant's new husband, Charles Howell. Considerable testimony was adduced to show that Howell had various criminal convictions, was prone to domestic violence and was previously involved in sexual abuse perpetrated against Shannon Scarberry — the thirteen year old daughter of a former girlfriend. Though Howell admitted his past criminal convictions, he denied that he was violent or that he had ever abused Shannon Scarberry. Appellant and her brother both testified that Howell and the child had a good relationship with each other.
 {¶ 6} The magistrate filed a decision on January 17, 2002 which concluded that appellant's marriage to Howell constituted a "change in circumstances" since the shared parenting plan was originally adopted and that this change had an adverse impact on the minor child. Further, the magistrate concluded that it was in the child's best interest to modify the plan so as to designate appellee as the residential parent. Appellant filed objections to the magistrate's decision and asked for a new trial. She argued that the decision was both an abuse of discretion (because of the delay in rendering a decision) and was against the weight of the evidence. Appellant further asserted she was entitled to a new trial because, inter alia, newly discovered evidence showed that the child was now happily residing with her and her new husband This newly discovered evidence consisted of various affidavits addressing the months that had elapsed since the date of the final hearing.
 {¶ 7} On June 4, 2002, the trial court overruled appellant's objections. The court noted that only a partial transcript had been provided in support of the objections but that sufficient evidence supported the magistrate's conclusions. A judgment that adopted the magistrate's decision, and ordered that appellee be designated the child's residential parent, was filed on October 30, 2002. Appellant filed her first notice of appeal in Case No. 02CA19 from that judgment.
 {¶ 8} On December 11, 2002, the magistrate filed a nunc pro tunc decision and corrected some typographical errors in the names of certain witnesses set out in his original decision. Appellant objected to the nunc pro tunc decision and asked that it be stricken and, once again, requested a new trial. On January 8, 2003, the trial court overruled appellant's motion for a new trial that was made as part of her January 2002 objections to the magistrate's original decision. Two days later, the court overruled appellant's objections to the nunc pro tunc magistrate's decision and overruled her motion to strike. Appellant filed her second notice of appeal in Case No. 03CA3 from that entry. On February 19, 2003, we ordered the two cases consolidated and the matter is now before use for review.
 I {¶ 9} Appellant asserts in her first assignment of error that the magistrate's decision to recommend a modification of the previous shared parenting agreement is against the manifest weight of the evidence. Specifically, appellant contends that no evidence established that her new husband's criminal background, violent tendencies or incident of alleged sexual abuse had an adverse impact on the minor child. We disagree with appellant.
 {¶ 10} Our analysis begins with R.C. 3109.04(E)(1)(a) which provides:
"The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
"(i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.
"(ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.
"(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."
Pursuant to this statute, in determining whether to modify the allocation of parental rights and responsibilities, three factors must guide a trial court's decision: (1) whether there has been a change in circumstances since the previous decree, (2) whether a modification is in the child's best interests, and (3) whether the benefits resulting from the change outweigh any harm. Beaver v. Beaver (2001), 143 Ohio App.3d 1,9, 757 N.E.2d 41; Clark v. Smith (1998), 130 Ohio App.3d 648, 653,720 N.E.2d 973; Stover v. Plumley (1996), 113 Ohio App.3d 839, 842,682 N.E.2d 683. In the case sub judice, the magistrate found all three of these factors present. Appellant contends that no evidence exists to show that Howell's criminal actions had any "adverse impact" on the minor child. She contends that, without some evidence of adverse impact, the magistrate could not recommend, and the trial court could not order, a modification of the shared parenting agreement. Appellant cites Inscoev. Inscoe (1997), 121 Ohio App.3d 396, 415, 700 N.E.2d 70, and Whaley v.Whaley (1978), 61 Ohio App.2d 111, 119, 399 N.E.2d 1270, wherein we held that a custodial parent's sexual conduct should have no bearing on custody determinations absent a showing of "direct adverse impact" on the minor child. We required a showing of adverse impact in those cases because sexual activity between consenting adults is a benign characteristic and does not automatically have a negative effect on a minor child. Because courts do not punish custodial parents for failing to follow what may be perceived as a proper "moral code of conduct," we require that a showing of adverse impact on a child before custody may be modified on grounds of sexual conduct.
 {¶ 11} By contrast, in the case at bar Charles Howell's criminal acts, particularly his tendencies for violence and his inappropriate sexual activity with another minor child, are not benign. We note that when a parent chooses to expose his or her child to another person who has a criminal history that involves violence or sex offenses, courts may, under certain circumstances, consider this factor when resolving child custody issues. Moreover, in the instant case ample evidence of an adverse impact upon the minor child was adduced during the trial court proceedings. Euna Roof, the child's grandmother, testified that she would babysit her grandson for her former daughter-in-law. Roof noted that after appellant began a relationship with Howell, the child became fearful of going home with his mother. The magistrate found this testimony compelling and expressly stated in his decision that this evidence demonstrated an adverse impact. Given that the magistrate was in a better position than this Court to observe the witness and to weigh her credibility, we find no error in that decision.
 {¶ 12} Because child custody issues involve some of the most difficult and agonizing decisions that trial courts are required to decide, courts must have wide latitude to consider all of the evidence and appellate courts should not disturb a trial court's judgment absent a showing of an abuse of that discretion. See Davis v. Flickinger (1997),77 Ohio St.3d 415, 674 N.E.2d 1159; Bragg v. Hatfield, 152 Ohio App.3d 174,787 N.E.2d 44, 2003-Ohio-1441, at ¶ 24; Hinton v. Hinton, Washington App. No. 02CA54, 2003-Ohio-2785, at ¶ 9; Ferris v. Ferris, Meigs App. No. 02CA4, 2003-Ohio-1284, at ¶ 20. We note that an abuse of discretion is more than an error of law or judgment; it implies that the court's attitude was unreasonable, "unreasonable, arbitrary or unconscionable. See Landis v. Grange Mut. Ins. Co. (1998),82 Ohio St.3d 339, 342, 695 N.E.2d 1140; Malone v. Courtyard by MarriottL.P. (1996), 74 Ohio St.3d 440, 448, 659 N.E.2d 1242; State ex rel.Solomon v. Police Firemen's Disability Pension Fund Bd. ofTrustees (1995), 72 Ohio St.3d 62, 64, 647 N.E.2d 486. In applying the abuse of discretion standard, appellate courts are admonished that they are not to substitute their judgment for that of the trial court. SeeState ex rel. Duncan v. Chippewa Twp. Trustees (1995), 73 Ohio St.3d 728,732, 654 N.E.2d 1254; In re Jane Doe 1 (1991). 57 Ohio St.3d 135,137-138, 566 N.E.2d 1181; Berk v. Matthews (1990), 53 Ohio St.3d 161,169, 559 N.E.2d 1301. To show an abuse of discretion, the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias. Vaught v. Cleveland Clinic Found.,98 Ohio St.3d 485, 787 N.E.2d 631, 2003-Ohio-2181, at ¶ 13; Nakoffv. Fairview Gen. Hosp. (1996), 75 Ohio St.3d 254, 256, 662 N.E.2d 1.
 {¶ 13} We agree with the trial court's conclusion that the evidence adduced below demonstrates that Howell has both a propensity for violence and has engaged in inappropriate sexual activity with minor children. Tammy Sigman, his former wife, characterized Howell as a "violent man" and related how she contacted police more than a dozen times during their marriage because of domestic violence. Sigman also testified that Howell previously dislocated her jaw, broke her ribs and left their son home alone locked in a closet. She also described a recent scuffle that Howell engaged in during their son's 10th birthday party. Ellis Willis, a former neighbor, also confirmed Howell's violent propensities.
 {¶ 14} Even more disturbing, however, was the testimony of Shannon Scarberry — the thirteen year old daughter of a prior girlfriend. Scarberry related that Howell hit her "a lot" and, one time, threw her through a screen door. Worse yet, Shannon testified as to the following incident between her and Howell:
"Q. What did Mr. Howell do that caused you and your Mother to file that criminal charge?
"A. He touched me.
"Q. And, I certainly don't mean to embarrass you, and I don't mean to upset you but uh . . . the Magistrate would need to know the details of what had happened. * * *
"* * *
"A. He had me put my knees on the coffee table and pull my pants down and he just pulled me apart.
"[Q.] Did he do anything else?
"* * *
"A. He wrote on me.
"Q. Could you tell the Court where he wrote on you?
"A. On my boobs and above the like right below my bellybutton . . . there and on my butt and my arms and stuff.
"Q. What kind of things did he write?
"A. He would write hearts and put my Mom and his name in `em and stuff with little ribbons through `em. Draw leaves and stuff."
 {¶ 15} Obviously, the conduct described above is inappropriate. We recognize that Howell did deny these accusations, but the magistrate did not find his testimony credible. We again emphasize that the magistrate was in a much better position than this Court to view the witnesses and observe their demeanor, gestures, and voice inflections and use those observations in weighing the credibility of the proffered testimony. SeeMyers v. Garson (1993), 66 Ohio St.3d 610, 615, 614 N.E.2d 742; SeasonsCoal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273. Accordingly, we defer to his determination that Howell's denial was not credible.
 {¶ 16} Again, we note that the evidence revealed that the minor child was fearful of returning home with his mother and being in contact with his stepfather. In light of that evidence and the other evidence adduced at the hearing, we cannot conclude that the trial court erred, let alone abused its discretion, in modifying the shared parenting agreement. Therefore, we overrule appellant's first assignment of error.
 II {¶ 17} We will jointly address appellant's second, third and fifth assignments of error as they all involve various delays in this case. Specifically, appellant points to the approximate fifteen (15) month interval between the last hearing date and the issuance of the magistrate's decision as well as the twelve month interval between her first request for a new trial (made as part of her objections to the magistrate's decision) and the trial court's denial of that request.
 {¶ 18} Proceeding in reverse order, we are not persuaded that the trial court acted egregiously in delaying its disposition of appellant's request for a new trial. That request was made as part of a multi-pronged motion/pleading filed January 30, 2002, wherein appellant (1) objected to the magistrate's decision, (2) appealed the orders contained in that decision, (3) moved the trial court to set that decision aside, (4) requested a new trial and (5) requested that the orders be stayed pending a further hearing. Given the nature of this filing, it appears that the trial court may have simply overlooked the request for new trial when it ruled on appellant's objections to the magistrate's decision. Indeed, we note that the court's final ruling on the request for new hearing came only after this Court filed an entry on December 20, 2002 and pointed out that the new trial request was still pending.
 {¶ 19} Appellant also objects to the fifteen month interval between the conclusion of the hearing and the issuance of the magistrate's decision. We agree that such a delay should be avoided. Appellant has not, however, persuaded us that she suffered any prejudice as a result of the lapse of time.
 {¶ 20} Appellant counter argues that she was in fact prejudiced because the magistrate's decision refers to "nonexistent witnesses," confused some of the witness's names, confused the testimony of Shannon Scarberry and overlooked a portion of Howell's testimony. We are not persuaded. Although some confusion and/or misspelling of some witness's names appear in the original magistrate's decision, we discern no real prejudice in those mistakes and we believe it is an exaggeration to contend that these mistakes amounted to the magistrate concocting the names of "nonexistent witnesses."
 {¶ 21} As for appellant's claim that the magistrate confused the testimony of Shannon Scarberry, the gist of her argument is that Shannon's testimony "simply was not credible." As we noted supra, credibility arguments go to the weight of the evidence and we will generally defer to the trial of fact on those types of issues. With regard to the magistrate's recitation of Howell's testimony, we agree with appellant that the magistrate erred in stating that he did not deny the incident with Shannon Scarberry. Rather, appellant correctly notes that Howell did expressly deny the incident. Elsewhere in his decision, however, the magistrate opined that he did not find Howell's testimony to be credible. The magistrate also appears to have afforded weight to the testimony of Shannon Scarberry. Thus, it appears that the magistrate would not (and did not) have accepted Howell's denial of Scarberry's accusation. For these reasons, we find no prejudice resulting from the delay in rendering the decision.
 {¶ 22} We acknowledge the provisions of R.C. 2701.02 which state, in pertinent part:
"When submitted to a court on motion, demurrer, or motion for new trial, or when submitted to a court on appeal on questions of law or on final trial on the issues joined, a cause begun in a court of recordshall be determined and adjudicated within thirty days after suchsubmission.
 {¶ 23} This section applies to causes sent to a referee . . ."
 {¶ 24} Although this statute should not be ignored, its provisions are only directory. See Dayton Women's Health Ctr., Inc. v. Enix (1993),86 Ohio App.3d 777, 782, 621 N.E.2d 1262; Smith v. Smith (Dec. 5, 2001), Summit App. No. 20519; Wright v. Morris (May 9, 1994), Ross App. No. 93CA1955. The best interests of the child remains the polestar in custody cases, Whaley, supra at 116, and, thus, we will not reverse the trial court's judgment, or place the minor child in what might be a detrimental situation, simply because the trial court proceeding was not concluded in a timely manner. Rather, appellant must demonstrate actual prejudice. She has failed to do so.
 {¶ 25} For these reasons, we hereby overrule appellant's second, third and fifth assignments of error.
 III {¶ 26} Appellant's fourth assignment of error is directed at an "ex parte contact" between the magistrate and appellee's counsel. On December 30, 2001, more than a year after the hearing concluded, appellee's counsel sent a letter to the magistrate and inquired as to the status of the case. The letter related that "[t]his issue remain very important to my client as he continues to be concerned for the well being of his child living with the child's mother and her new husband, Charles `Corky' Howell." The letter concluded by stating that the court should let him know if there was anything he could do to assist in the preparation of a decision. Appellant contends that the "sum and substance" of this letter was that Howell "was doing something to Greggy Keller, something that the court needed to act to correct promptly."
 {¶ 27} In our view, this communication simply demonstrated a concern over the case not having been decided after more than a year — a concern obviously shared by appellant as demonstrated by her previous assignments of error — and was intended to request the magistrate to render a decision. After our review of this matter, we do not discern any sinister motive or attempt by opposing counsel to inflame the magistrate against appellant and Howell. The comment about appellee's concern for his son merely repeats the claim in this case since the filing of appellee's petition to modify the shared parenting agreement.[3]
 {¶ 28} For these reasons, the fourth assignment of error is without merit and is hereby overruled.
 IV {¶ 29} Appellant's sixth assignment of error posits a variety of challenges to the magistrate's nunc pro tunc decision to correct various typographical errors in witness's names. First, appellant contends that the magistrate had no authority to issue such a nunc pro tunc decision. We disagree. Unless otherwise limited in the order of reference, magistrates have the same power to regulate proceedings before them as do trial courts. See Civ.R. 53(C)(2). This is a broad grant of authority and we see no reason why a magistrate could not issue a nunc pro tunc ruling the same as a trial court. We also note that Ohio caselaw is replete with examples of nunc pro tunc magistrate's rulings. See e.g. In re Baby GirlDoe, 149 Ohio App.3d 717, 778 N.E.2d 1053, 2002-Ohio-4470, at ¶¶ 52 61; Perko v. Perko, Geauga App. Nos. 2001-G-2403, 2002-G-2435, 2002-G-2436, 2003-Ohio-1877, at ¶ 9; In re Henry, Lake App. No. 2001-L-115, at ¶ 10. Appellant cites us no authority to the contrary and, thus, we conclude that in the case at bar the magistrate had the authority to issue a nunc pro tunc decision.
 {¶ 30} Appellant also contends that this action was an improper use of a nunc pro tunc entry. Again, we disagree. The purpose of a nunc pro tunc entry is to correct an omission in a prior judgment so as to enter upon the record a judicial action taken but erroneously omitted from the record. See Roth v. Roth (1989), 65 Ohio App.3d 768, 771; 585 N.E.2d 482;State v. Breedlove (1988), 46 Ohio App.3d 78, 81, 546 N.E.2d 420; Mckayv. Mckay (1985), 24 Ohio App.3d 74, 75, 493 N.E.2d 317. It is not made to show what the court might or should have decided, or intended to decide, but what it actually did decide. Leaseway Distribution Centers, Inc. v.Ohio Dept. of Adm. Serv. (1988), 49 Ohio App.3d 99, 108, 550 N.E.2d 955; also see Renz v. Renz (Aug. 25, 1992), Athens App. Nos. 1492 1519. A nunc pro tunc judgment should be used only to change clerical errors and should not be used to change something which was deliberately done. See Dentsply Internatl., Inc. v. Kostas (1985), 26 Ohio App.3d 116, 118,498 N.E.2d 1079; also see Metzger v. Thurman (Jul. 27, 1993), Scioto App. No. 92CA2106; Baker v. Dupler (Dec. 13, 1991), Athens App. No. 1481.
 {¶ 31} We have reviewed both the magistrate's original decision and the nunc pro tunc decision. It is clear to this Court that the magistrate simply corrected the misspellings or misidentification of various witnesses. Appellant counters that, in reality, the magistrate "created nonexistent witnesses." We previously rejected this claim in our review of appellant's second assignment of error, and we need not address it again. Our review reveals that the magistrate did not fabricate nonexistent witnesses. Rather, the magistrate merely misidentified or misspelled the names of actual witnesses.
 {¶ 32} For all these reasons, we find appellant's sixth assignment of error without merit and it is hereby overruled.
 V {¶ 33} Appellant's seventh assignment of error involves the failed attempt to interview the minor child and to ascertain the parent with whom he wanted to live. The magistrate attempted to interview the child, but concluded that he did not have "the necessary maturity to understand what's going on." Appellant contends that the form of the interview was flawed. Specifically, she objects to the magistrate asking the child with whom he wanted to live and, after the boy responded that he wanted to live with his mother, then determining that he lacked the requisite maturity. Appellant concludes that the magistrate should not have asked that question until after he had made the determination of the child's level of comprehension.
 {¶ 34} Our analysis begins with R.C. 3109.04 which states, in part, as follows:
"(B)(1) When making the allocation of the parental rights and responsibilities for the care of the children under this section in an original proceeding or in any proceeding for modification of a prior order of the court making the allocation, the court shall take into account that which would be in the best interest of the children. In determining the child's best interest for purposes of making its allocation of the parental rights and responsibilities for the care of the child and for purposes of resolving any issues related to the making of that allocation, the court, in its discretion, may and, upon the request of either party, shall interview in chambers any or all of the involved children regarding their wishes and concerns with respect to the allocation.
"(2) If the court interviews any child pursuant to division (B)(1) of this section, all of the following apply:
"(a) The court, in its discretion, may and, upon the motion of either parent, shall appoint a guardian ad litem for the child.
"(b) The court first shall determine the reasoning ability of thechild. If the court determines that the child does not have sufficientreasoning ability to express the child's wishes and concern with respectto the allocation of parental rights and responsibilities for the care ofthe child, it shall not determine the child's wishes and concerns withrespect to the allocation. If the court determines that the child has sufficient reasoning ability to express the child's wishes or concerns with respect to the allocation, it then shall determine whether, because of special circumstances, it would not be in the best interest of the child to determine the child's wishes and concerns with respect to the allocation. If the court determines that, because of special circumstances, it would not be in the best interest of the child to determine the child's wishes and concerns with respect to the allocation, it shall not determine the child's wishes and concerns with respect to the allocation and shall enter its written findings of fact and opinion in the journal. If the court determines that it would be in the best interests of the child to determine the child's wishes and concerns with respect to the allocation, it shall proceed to make that determination.
"(c) The interview shall be conducted in chambers, and no person other than the child, the child's attorney, the judge, any necessary court personnel, and, in the judge's discretion, the attorney of each parent shall be permitted to be present in the chambers during the interview." (Emphasis added).
 {¶ 35} The magistrate conducted the in camera interview and determined that the child did not possess the reasoning ability or the maturity to select the parent with whom he wanted to live. Appellant does not appear to contest that determination as much as she does the magistrate's decision to ask the child with whom he wanted to live as part of his determination process. Appellant contends such question should only have been asked once the magistrate determined if he had the requisite reasoning ability. We are not persuaded.
 {¶ 36} First, we note that the statute does not set out any talismanic language to use when interviewing children in custody disputes. This was probably something the Ohio General Assembly thought best to leave to the discretion of the interviewer. Second, from our review of the transcript, it is clear that the question was put to the child in the context of determining if he possessed sufficient reasoning ability to make his choice. In other words, we do not find that the magistrate inappropriately skipped ahead in the process. Third, even if the question was improper, we readily conclude that it was harmless error. Appellant does not assert that her son did in fact possess the requisite reasoning ability and points to no prejudice in the case, except that the child gave an answer that, if he had been deemed sufficiently mature, would have benefitted her position. It is also worth noting that the minor child's answers to the magistrate's questions appears to support the determination that the minor child lacked the requisite maturity to make a meaningful decision.[4] For these reasons, we find no merit in appellant's seventh assignment of error and it is hereby overruled.
 {¶ 37} Having reviewed all errors assigned and argued by appellant in her brief, and finding merit in none of them, the judgment of the trial court is hereby affirmed.
JUDGMENT AFFIRMED.
Evans, P.J. Kline, J.: Concur in Judgment Opinion.
[1] Indeed, Euna Roof, her ex-husband's mother, conceded that her former daughter-in-law was not a bad parent.
[2] The only actual incident appellee claimed that his visitation was thwarted was when appellant refused to give him a "couple extra days" with the minor child to take him to New York City.
[3] We also disagree with appellant's characterization of this letter as an "ex parte" communication. An "ex parte" action is defined, in part, as an act done without notice to an adversely interested party. See Black's Law Dictionary (5th Ed. 1979) 517. The letter (which is attached to appellant's objections to the nunc pro tunc magistrate's decision) reveals that a copy was forwarded to appellant's counsel. Thus, notice was given and the communication would not have been ex parte.
[4] For example, the child told the magistrate that his father was not nice to him. When asked to explain why he thought his father was not nice, the boy explained that appellee would not let him play checkers at bedtime.