[Cite as *DiDonato v. DiDonato*, 2016-Ohio-1511.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| | | JUDGES: |
| STEPHEN J. DIDONATO | : | Hon. W. Scott Gwin, P.J. |
| | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | |
| -vs- | : | |
| | : | Case No.    2015 AP 07 0042 |
| CHRISTINA HUTH DIDONATO | : | 2015 AP 09 0051 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Civil appeal from the Tuscarawas County
Court of Common Pleas, Case No. 2013
TC 07 0288

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      April 11, 2016

APPEARANCES:

For Plaintiff-Appellee

DEBORAH GREENHAM
P.O. Box 711
New Philadelphia, OH 44663

For Defendant-Appellant

MICHELA HUTH
257 Canal Street
Box 17
Bolivar, OH 44612

*Gwin, J.*

{¶1} Appellant appeals the judgment entries of the Tuscarawas County Court of Common Pleas.

### *Facts & Procedural History*

{¶2} Appellant Christina Huth DiDonato is biological mother of two minor children, D.D., born November 22, 2004, and P.D., born May 5, 2007. Appellee Stephen DiDonato is the biological father of the children. On July 2, 2013, appellee filed a complaint for divorce. On April 8, 2014, the parties entered an agreed judgment entry of divorce. The parties agreed appellant would be the sole residential and legal custodian of the children, subject to visitation and parenting rights of appellee. Further, the agreed entry specifically provided as follows, "the parties agree that they will discuss and cooperate on matters relating to the children's welfare, health and education, and each party will encourage the child to respect, honor, and love the other party."

{¶3} On May 7, 2014, appellee filed a motion to modify parental rights and responsibilities, requesting that he be named the residential and legal custodian based upon a change in circumstances. On May 23, 2014, the magistrate issued an interim order ordering no texting between the parents and ordering any non-emergency contact be done through the court's Family Wizard Program.

{¶4} The parties then filed numerous motions, including: appellee's motion for designation of public place for exchange of children, appellant's motion for right of first refusal to watch children, and appellee's motion for immediate oral hearing on motion that appellant not be permitted to contact appellee's childcare provider and motion for designation of public place for exchange. The magistrate set the motions for a hearing

on July 17, 2014. On July 17, 2014, appellant filed a motion to continue the hearing due to the death of her significant other's sister. However, both of the parties' attorneys appeared in front of the magistrate on July 17, 2014.

{¶5} On July 18, 2014, the magistrate entered an interim order stating that both parties may not contact the other party's childcare provider unless there is an emergency and finding there is no right of first refusal for child care. Appellant filed a motion to set aside the July 18th magistrate's order. The magistrate issued an order on August 15, 2014 ordering the exchange of the children between the parties at the Marathon Station in Strasburg and ordering appellant to deliver the children to Burger King for football practice or games. The magistrate further ordered appellee to give appellant, through the Family Wizard, the name and number of the childcare providers and stated appellant was not to contact them except in an emergency. Finally, the magistrate ordered that neither party should make any doctor's appointments that would occur during the other party's possession of the children.

{¶6} On August 19, 2014, appellee filed an ex parte, emergency motion regarding school for the children. Appellee sought an emergency order for the children to remain in New Philadelphia schools rather than transfer to Tusky Valley schools. The motion indicated appellee was notified of this intended transfer of schools by appellant on Friday, August 15, 2014, and was an emergency because school started on Wednesday, August 20, 2014. After conducting a phone conference with the attorneys of both parties and the guardian ad litem of the children, the magistrate issued an order on August 19, 2014 ordering the children to remain in New Philadelphia School System. The magistrate further set the motion for a full hearing on August 25, 2014.

{¶7} Appellant filed an emergency motion for stay and objection to the ex parte decision on August 22, 2014. Appellant argued the court order effectuated a modification of parental rights without a notice and opportunity to be heard. The magistrate denied appellant's motion for emergency stay on August 25, 2014. The magistrate conducted a full hearing on August 25, 26, 27, and September 4 of 2014.

{¶8} The magistrate issued an order on September 17, 2014. The magistrate found appellant admitted she unilaterally made the decision to transfer schools, in violation of the agreed judgment entry which required the parties to "discuss" and "cooperate" about the children's education. Further, the magistrate found the guardian ad litem "emphatically" recommended the children continue in the New Philadelphia School System. The magistrate noted P.D. has an individualized education program ("IEP"). The magistrate found the disruption that would be caused by the change of school district, combined with the IEP, would not be in the best interest of the children. The magistrate further found since the matter was set on a motion to modify parental rights in October, it would be in the best interest of the children to stay in the same school system until the court ruled on the motion to modify parental rights. The magistrate thus ordered the children to remain in the New Philadelphia School System pending the resolution of the motion to modify parental rights. Appellant filed a motion to set aside the September 17, 2014 order; however, she withdrew the motion on October 14, 2014.

{¶9} Beginning in October of 2014, the magistrate held a hearing on appellee's motion to modify parental rights. The hearing continued to several dates in November and concluded on December 9, 2014.

{¶10} Christine Stewart ("Stewart"), the babysitter appellee hired to watch the children during his parenting time, testified she obtained a CPO against appellant. Stewart testified that, prior to her baby-sitting, appellant was concerned and told Stewart no one but family watches the children. On Stewart's first day watching the children, appellant called her several times and, in one call, screamed at Stewart and told her she was calling the police and taking Stewart to court. Stewart stated that, even after the children left, appellant continued to text her. Stewart stated the next time she watched the children, appellant called her six times in three hours and texted her multiple times. Stewart testified that when she took P.D. to a track meet, appellant, while the children were around, told Stewart she was an unfit caregiver, yelled at her, and cussed her out. Stewart stated she never hit the children or left them unattended. Stewart testified D.P.'s behavior changed from well-behaved to agitated and arguing when appellant called.

{¶11} John Frank ("Frank"), the guardian ad litem appointed for the children, testified he believes there has been a fundamental change from the time of the agreed judgment entry, including the relocation of appellant and the potential change of school district. Frank testified any skepticism or rebuttable presumption about the timing of appellee's motion has been overcome.

{¶12} Frank testified the conflict between appellant and appellee is ripping the children up and taking a huge toll on them. Further, the children love both their parents, but, if this conflict does not subside, the children are not going to love either parent. Frank testified the children are well-aware of the conflict between the parents. Frank stated the children never mentioned any abuse to him, and they are not afraid of either parent. Frank testified there is nothing to suggest the children are traumatized. The children's'

interactions with each parent is loving, natural, and comfortable.  Frank stated the parties' communication on the Family Wizard court program perpetuates the conflict.

{¶13}  Frank testified the difficulties appellee has with appellant are not carrying over to his other relationships; however, some behavior appellant exhibits toward appellee she exhibits with others as well, as evidenced by the CPO and work documents. Frank is concerned her behavior is more pervasive than just the custody situation.  Frank testified appellant is fixated on the idea that she is the custodial parent.  Frank stated appellant's inconsistencies of saying one thing and then saying the opposite, presents challenges in this custody situation.  Frank saw more behavior at appellant's home that leads him to believe there is spillover from her negative emotions towards appellee than with appellee at appellee's home.  Frank testified appellant calls appellee "Mr. DiDonato" in front of the children and the children pick up on this.  Frank described the relationship between appellant and appellee as win-loss and one side versus the other, even with extended family.

{¶14}  Frank recommended the parties have shared parenting.  However, Frank testified if he had to decide which parent has a somewhat better chance of honoring and respecting the other parent's role, it would be appellee because appellant's impairment to honor and facilitate the other parent's role is more significant than appellee's impairment.  Frank recommended the children remain in the New Philadelphia School System.  Frank stated appellant's sleeping arrangement with the children is unhealthy because P.D. sleeps in her bed.

{¶15}  Frank testified the pattern of medical appointments made by appellant for the children is driven by animosity and acrimony of litigation and now rises to the level of

actually harming the children. Frank again stated the conflict between the parties is "absolutely" detrimental to the children. Frank recommended appellant not be the sole medical-decision making authority for the children.

{¶16} On cross-examination, Frank testified the following had a bad impact on the children: fighting, conflict, acrimony, and the parties' arguing over everything. Frank stated post-decree conflict between the parties goes on and on. Frank testified he spoke with the children and the conflict is highly distressing to them. Frank could tell this from the children's words and manner of speaking. Frank testified appellant called appellee "Mr. DiDonato" during Frank's home visit and it was her routine to call him that.

{¶17} Anita Exley ("Exley"), a psychologist at Chrysalis Counseling Center, did a psychological evaluation of appellant and appellee. Exley testified appellant may become easily overwhelmed by complex situations and goes for the quick solution rather than tolerating distress to see through multiple solutions to problems. Exley stated appellant has an inflated sense of self-worth, shows self-satisfying and self-dramatizing behavior, is emotionally reactive, and it is difficult for her to reason through things. Exley testified appellant relies so heavily on her family enmeshment that it appears to reinforce her skewed belief system. Exley found it odd when appellant said she was abused, but could not definitively answer what she meant by abuse and domestic violence. Due to appellant's poor eye contact and failure to provide full responses, Exley did not feel like appellant was being upfront and honest with her.

{¶18} Exley testified the general effect of enmeshment on children is that they are raised in an environment closed to outside influences. Further, it would be difficult for appellant to co-parent and work collaboratively. Exley stated if appellant referred to

appellee as "Mr. DiDonato," or "the perpetrator," she would have concerns about her doing this in front of the children. Exley testified appellant was barely able to hold herself together emotionally and if someone has difficulty managing her own emotions, it is hard to be able to address a child's needs. Further, Exley stated it will be difficult for appellant to see things other than the way she currently sees things and dealing with the challenges of parenting would be difficult as she is likely to become angry and frustrated.

{¶19} Exley testified it is not healthy for parents to engage in verbal altercations in front of the children, as this could emotionally affect them.

{¶20} Exley stated appellee seems rushed and gets caught up in minutia. Further, he may have ADHD and is passive-aggressive and overly reactive. Exley testified appellee has borderline personality features with negativistic features. However, he is aware of his health issues and is attempting to improve them via counseling.

{¶21} Exley testified appellant's strengths are intelligence and the ability to research. Appellee's strengths are genuineness and sincerity.

{¶22} Wendy Roberts ("Roberts"), a counselor, testified she became involved with the children in July or August of 2014 for behavioral problems such as anger management, frustration, and disrespect. Roberts stated the children did not make as much progress as she would have liked because they still have problems with anger and acting up. Roberts felt the children have adjustment disorder due to the divorce and witnessing the conflict between the parents.

{¶23} The majority of the remainder of the testimony at the hearing was the testimony of appellant and appellee. Each testified extensively. Much of the testimony included various incidents between the parties, with each having a different and contrary

view on how these events were caused, how they unfolded, their result, and their impact. This Court need not restate that voluminous testimony of each of those events. The balance of the parties' testimony can be summarized as follows:

{¶24} Appellee stated that, at the time of the divorce decree, he believed they could agree and cooperate regarding the kids' health, welfare, and education. He did not expect things to get worse or expect the CPO against Stewart. Appellee testified he is seeing a counselor and intends to continue with counseling. After the divorce, appellee stated appellant texted him 30-40 times per day. He was getting calls from the children, hysterical, wanting him to come and get them. Appellee testified he cannot get a straight answer from appellant. Further, that she calls him "Mr. DiDonato" in front of the children. Appellee testified that, since the divorce, D.P. has become more defiant, it is hard to get him to focus, and is now getting into fights.

{¶25} Appellant testified P.D. sleeps in a queen bed with her because she will not force him to sleep in his own bed. Appellant stated she made the decision to send the children to Tusky Valley on her own. Appellant denies the allegations in Stewart's CPO. Appellant testified the children are aware of the CPO as she told D.P. she could not come to his games because she cannot be within five hundred feet of Stewart's home. Appellant stated the issues with the children appeared before the divorce decree. Appellant testified she is seeing a counselor, but has not gotten to any issues involving parenting and improving her parenting skills as she is seeing the counselor due to domestic violence. Appellant denies calling appellee "Mr. DiDonato" in front of the children.

**{¶26}** Appellant testified she cannot communicate with appellee and appellee cannot communicate with her; otherwise, it escalates. When asked on cross-examination why there are frequent conversations from her requesting appellee meet her someplace other than the Burger King or the Marathon Station as ordered by the trial court, appellant stated "for certain situations, why not?" Appellant admitted counselors have told her the children's issues are not due to domestic violence.

**{¶27}** The magistrate issued an order on February 13, 2015. The magistrate issued forty-one (41) findings of fact. The magistrate found a change of circumstances due to: appellant moving out of the children's school district to a studio cottage; a CPO issued against appellant to protect one of appellee's childcare providers; and the significant escalation of the animosity between the parties.

**{¶28}** The magistrate also detailed each factor contained in R.C. 3109.04(F) as to best interests of the children. Both parents want custody of the children and neither supports the parenting skills of the other. The magistrate did not interview the children, but the guardian ad litem did interview the children and reports the children are very disturbed by the constant volatility between the parents, but otherwise are well-adjusted and found no evidence of the "trauma" suggested by appellant. The magistrate found credible evidence showed the children are reluctant to talk to a parent in public when out with the other parent or the other parent's family. D.D. was suspended for fighting with another child. P.D. has an IEP in school and D.D. is taking Zoloft. The children's counselor states the children do not have post-traumatic stress disorder, despite appellant's contention that they do. The magistrate found both parties have issues that need addressed with counseling. The magistrate further found appellee was more likely

to honor court visitation. The magistrate found there was not a denial of companionship time; however, appellant insisted on the "Family Wizard" that appellee pick up the children at places other than the court-ordered meeting place.

{¶29} The magistrate determined that, while both parties engaged in behavior that is not in the best interest of the children in the past, appellee has decreased the frequency of those behaviors and appellant has increased the frequency of those inappropriate behaviors. The magistrate found the children are well integrated into both homes and any change in the amount of time with appellee will have benefits for the children which outweigh any harm from a change of environment.

{¶30} In the "conclusions of law" section of the magistrate's order, the magistrate stated appellee's home should be the residential home for school purposes and he should make all educational decisions for the children. Further, appellant should not be the sole decision-maker regarding the children's medical care.

{¶31} The magistrate issued a clarification of her February 13th decision on February 19, 2015. The magistrate stated each parent shall be the residential parent for the week the children are with them; appellee is the custodial parent for school purposes; and appellant is not the custodial parent for medical purposes.

{¶32} Appellant filed objections to the magistrate's decision on February 27, 2015. Appellee filed objections to the magistrate's decision, arguing the order does not say who has custody. On March 12, 2015, appellee filed a motion for contempt regarding the public exchange of the children and the doctor's appointments of the children. On July 10, 2015, appellant filed supplemental objections to the following magistrate's decisions: February 13, 2015, August 19, 2014, and September 17, 2014.

{¶33} The trial court issued a decision on the parties' objections on July 22, 2015. The trial court vacated the magistrate's February 19, 2015 order. The trial court also found: appellant's objections to the August 19, 2014 and September 17, 2014 magistrate's orders were untimely; appellant's constitutional rights were not violated; and the evidence appellant argues is hearsay was supported by the testimony of several witnesses. The trial court modified several of the magistrate's findings of fact, including the fact that the guardian ad litem's recommendation regarding shared parenting is not realistic based upon the parties' inability to cooperate or communicate with each other.

{¶34} The trial court also modified the magistrate's conclusions of law, adding the law for change of circumstances and best interest of the child. Based upon the findings of fact and conclusions of law, the trial court granted appellee's motion to modify and found appellee shall be named the residential parent and legal custodian of the children. The trial court further found appellee should make all educational and medical decisions for the children.

{¶35} On August 17, 2015, appellee filed a motion for clarification of the July 22, 2015 judgment entry regarding sports, activities, and right of first refusal. Appellee requested the trial court provide the parties with more clarification regarding the sports and activities of the minor children, specifically, whether appellant can refuse to permit the children to participate in sports and other activities during her companionship time, to clarify how the children will be transported to these activities, and to clarify whether there is a right of first refusal if a parent is working.

{¶36} Appellant opposed the motion and argued the trial court did not have jurisdiction to consider the motion while the appeal of the July 22, 2015 judgment entry

was pending before this Court. The trial court ruled on the motion and found the matters contained in appellee's motion for clarification were not directly involved in or essential to the resolution of the issues raised in appellant's appeal of the July 22, 2015 judgment entry.

{¶37} In the September 2, 2015 judgment entry, the trial court found appellant should make arraignments for the children to attend their practices and games during her companionship time and has the option of changing her mid-week visitation to Tuesdays during football season with notice to appellee via the Family Wizard. The trial court further ordered the parties do not have a right of first refusal to care for the children when the other parent is working.

{¶38} Appellant appeals the judgment entries of the Tuscarawas County Court of Common Pleas and assigns the following as error:

{¶39} "I. THE COURT OF COMMON PLEAS COMMITTED REVERSIBLE ERROR AND PLAIN ERROR WHEN IT FOUND THAT APPELLANT'S OBJECTIONS TO THE MAGISTRATE'S ORDER DATED AUGUST 19, 2014 AND SEPTEMBER 17, 2014 WERE UNTIMELY.

{¶40} "II. THE COURT OF COMMON PLEAS COMMITTED REVERSIBLE ERROR AND ABUSED ITS DISCRETION WHEN IT FOUND CHANGE OF CIRCUMSTANCES PURSUANT TO R.C. 3109.04(E).

{¶41} "III. THE COURT OF COMMON PLEAS COMMITTED REVERSIBLE ERROR AND ABUSED ITS DISCRETION WHEN IT ADOPTED FINDINGS OF FACTS AND WHEN IT ADOPTED THE MAGISTRATE'S 3109.04(F) FINDINGS, WHICH WERE

NOT SUPPORTED BY THE FACTUAL RECORD AND WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶42} "IV. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN RULING ON, AND GRANTING APPELLEE'S MOTION FOR CLARIFICATION OF 07/22/2015 JUDGMENT ENTRY RE: SPORTS AND ACTIVITIES AND RIGHT OF FIRST REFUSAL DURING THE PENDENCY OF APPEAL CASE NO. 2015 AP 07 0042 IN THE COURT OF APPEALS OF OHIO, FIFTH APPELLATE DISTRICT.

{¶43} "V. THE COURT OF COMMON PLEAS COMMITTED REVERSIBLE ERROR AND ABUSED ITS DISCRETION WHEN IT ADOPTED THE FEBRUARY 13, 2015 MAGISTRATE'S DECISION WHICH RELIED UPON HEARSAY CONTAINED IN THE REPORT OF THE GUARDIAN AD LITEM."

*Standard of Review*

{¶44} Our standard of review in assessing the disposition of child custody matters is that of abuse of discretion. *Miller v. Miller*, 37 Ohio St.3d 71, 523 N.E.2d 846 (1988). Furthermore, as an appellate court reviewing evidence in custody matters, we do not function as fact finders; we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder could base his or her judgment. *Dinger v. Dinger*, 5th Dist. Stark No. 2001 CA 00039, 2001-Ohio-1386. The trial court is "best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). Deferential review in a child custody determination is especially crucial "where there may be much evidence by the

parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997).

I.

**{¶45}** In her first assignment of error, appellant argues the trial court committed reversible and plain error when it found appellant's objections to the magistrate's order dated August 19, 2014 and September 17, 2014 were untimely. Specifically, appellant contends it was plain error for the trial court to: order the children to attend school in a certain district because that changed the allocation of parental rights and responsibilities; remove custody without following the mandates of R.C. 3109.04; and due process was lacking when the children were ordered to attend New Philadelphia Schools.

**{¶46}** In this case, the magistrate issued orders on August 19, 2014 and September 17, 2014. While appellant's counsel filed a motion to vacate the September 17, 2014 magistrate's order, this motion to vacate and request for transcripts was subsequently withdrawn on October 14, 2014.

**{¶47}** On July 10, 2015, appellant filed "supplemental objections" to the February 13, 2015 magistrate's decision. Also in these supplemental objections filed on July 10, 2015, appellant filed objections to the August 19, 2014 and September 17, 2014 magistrate's orders. Civil Rule 53(D)(3)(b)(i) provides that "a party may file written objections to a magistrate's decision within fourteen days of the filing of the decision * * *." The magistrate's orders in this case are dated August 19, 2014 and September 17, 2014. Appellant's filing of objections on July 10, 2015 is not within the fourteen day time limitation provided by Civil Rule 53(D)(3)(b)(i). Accordingly, we find the trial court did not err in finding the objections untimely.

**{¶48}** Since appellant did not file objections in a timely manner under Civ.R. 53(D)(3)(b)(i), she has therefore waived the right to appeal the issues pursuant to Civil R. 53(D)(3)(b)(iv), except for plain error. *Waites v. Waites*, 5th Dist. Fairfield No. 15-CA-1, 2015-Ohio-2916. However, in appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where the error seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself. *Kell v. Russo*, 5th Dist. Stark No. 2011 CA 0082, 2012-Ohio-1286, citing *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997). The doctrine should only be applied in extremely unusual circumstances where the error complained of, if left uncorrected, would have a material adverse effect on the character and public confidence in the judicial proceeding. *Id.*

**{¶49}** Appellant contends it was plain error for the magistrate to order the children to attend school in New Philadelphia because it was the equivalent of modifying parental rights without following the mandates of R.C. 3109.04 and it was plain error for the magistrate to order the children to attend school in New Philadelphia without giving her due process.

**{¶50}** Upon review, we find this case does not present exceptional circumstances that rise to the level of plain error. The magistrate's order did not modify the allocation of parental rights. Rather, it was an interim order that ordered the status quo with regards to school for the children pending the resolution of appellee's motion to modify parental rights and was a determination as to whether appellant complied with the agreed entry

which required the parties to "discuss and cooperate on matters relating to the children's * * * education * * *."

**{¶51}** With regards to due process, the nature of an "ex parte" order is that it is an act done without notice to an adversely interested party. *See Keller v. Keller*, 4th Dist. Jackson No. 02CA19, 2003-Ohio-6462. Here, prior to ruling on the motion, the magistrate conducted a phone conference that included participation by appellant's counsel. Further, appellant waited until several days before the start of the school year to notify appellee she unilaterally determined the children were going to change schools. As this Court has previously recognized, "ex parte orders are frequently necessary in family court proceedings." *Reed v. Reed*, 5th Dist. Stark No. 2007 CA 00321, 2008-Ohio-4349. Further, any prejudice "which may inherently result from an ex parte order can be cured by a full hearing with appropriate notice on the issue submitted for the court's review." *Id.* Here, the magistrate set the matter for hearing on August 25, 2014 and conducted a full hearing on August 25, 26, 27, and September 4, 2014.

**{¶52}** Finally, because we affirm, *infra*, the trial court's decision to grant appellee's motion to reallocate parental rights, the children will necessarily be attending school in New Philadelphia. Accordingly, any argument relating to the orders at issue are therefore moot. *Furbee v. Bittner*, 11th Dist. Lake No. 2014-L-077, 2015-Ohio-4425.

**{¶53}** Upon review, we find no error that seriously affects the basic fairness, integrity, or public reputation of the judicial process or that challenges the legitimacy of the underlying judicial process itself. Appellant's first assignment of error is overruled.

II.

{¶54}  In her second assignment of error, appellant contends the trial court erred in finding a change in circumstances pursuant to R.C. 3109.04(E).  Appellant argues the issues found to be changes in circumstances were known at the time of the divorce decree and further contends there was no showing the circumstances had a material effect on the children.

{¶55}  Three elements must exist in order for a trial court to modify a prior decree allocating parental rights and responsibilities: (1) there must be an initial threshold showing a change in circumstances; (2) if circumstances have changed, the modification of custody must be in the children's best interests; and (3) any harm to the children from a modification of the plan must be outweighed by the advantages of such modification. R.C. 3109.04(E)(1)(a).

{¶56}  R.C. 3109.04(E)(1)(a) provides as follows:

The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent * * * and that the modification is necessary to serve the best interest of the child.  In applying these standards, the court shall retain the residential parent designated by the prior decree * * *, unless a modification is in the best interest of the child and one of the following applies * * * (iii) the harm likely to be caused by a

change in environment is outweighed by the advantages of the change of environment to the child.

**{¶57}** R.C. 3109.04 does not define the concept of "change in circumstances." However, Ohio courts have held the phrase is intended to denote "an event, occurrence, or situation which has a material and adverse effect upon a child." *Wyss v. Wyss*, 3 Ohio App.3d 412, 445 N.E.2d 1153 (10th Dist. 1982). A trial court "must carefully consider the nature, circumstances, and effects of each purported change, such as growth and improvement (excepting some mistakes along the way) should be fostered rather than blindly chilled or penalized in the name of stability." *Murphy v. Murphy*, 5th Dist. Tuscarawas No. 2014 AP 01 0002, 2014-Ohio-4020.

**{¶58}** Additionally, the change of circumstances must be "one of substance, not a slight or inconsequential change." *Davis v. Flickinger*, 77 Ohio St.3d 415, 674 N.E.2d 1159 (1997). This prevents a constant re-litigation of the issues that have already been determined by a trial court. *Id.* The change in circumstances "must be based upon some fact that has arisen since the prior order or was unknown at the time of the prior order." *Brammer v. Brammer*, 194 Ohio App.3d 240, 2011-Ohio-2610, 955 N.E.2d 453 (3rd Dist.). Relocation alone is not sufficient to constitute a change in circumstances, but may be a factor in such determination. *Thompson v. Thompson*, 5th Dist. Stark No. 2012CA00176, 2013-Ohio-2587.

**{¶59}** In this case, the trial court set forth three bases to support its finding a change of circumstances occurred following the agreed judgment entry: appellant moving out of the children's school district to a studio cottage; a CPO issued to protect one of

appellee's childcare providers; and the significant escalation of the animosity between the parties.

**{¶60}** Upon review, we find the trial court did not abuse its discretion in finding a change in circumstances. As noted above, the trial court is "best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact finder could base his or her judgment. *Dinger v. Dinger*, 5th Dist. Stark No. 2001 CA 00039, 2001-Ohio-1386. Thus, we defer to the trial court's interpretation of the evidence as it observed first-hand witnesses and their demeanor. *Wright v. Wright*, 5th Dist. Stark No. 2012CA00232, 2013-Ohio-4138.

**{¶61}** We find there is competent and credible evidence upon which the fact finder could base her judgment as to a change in circumstances. Stewart testified to the circumstances surrounding the CPO, including multiple phone calls and texts by appellant, along with an incident where appellant yelled at Stewart and cussed her out at a track meet in front of the children. Frank testified there has been a fundamental change from the time of the agreed judgment entry as to appellant's relocation from the children's previous school district to a studio cottage. Frank stated it is "patently unhealthy" for P.D. to be sleeping in the same bed as appellant. Appellant testified that while P.D. has his own trundle bed, she does not, and will not, make him sleep in it. Appellee testified that, at the time of the agreed judgment entry, he thought they could agree and discuss on

issues relating to the children, but the conflict between him and appellant increased after the agreed judgment entry.

**{¶62}** As to the increased conflict between appellant and appellee, a review of the record and the voluminous testimony makes it clear the parties cannot agree on anything. Further, there is competent and credible evidence to support the conclusion that this hostility increased from the time of the agreed entry and, though some communication issues may have existed at the time of the decree, it appears these communication issues have escalated and the parties' willingness to jointly work out their communication problems has changed since the agreed judgment entry. See *Murphy v. Murphy*, 5th Dist. Tuscarawas No. 2014 AP 01 002, 2014-Ohio-4020.

**{¶63}** With regards to the materially adverse effect upon the children, we find there is competent and credible evidence to support this determination. Appellant testified the children are aware of the CPO against her. Stewart stated D.D.'s behavior changed from well-behaved to agitated and arguing when appellant called on the phone. Frank testified that while there is no evidence the children are traumatized, the conflict between appellant and appellee is ripping the children up and is taking a huge toll on them. Frank stated the children are well-aware of the conflict between the parties and the conflict is "absolutely" detrimental to the children and is highly distressing to them. When Frank was asked on cross-examination what kind of behavior is having a negative impact on the children, Frank listed fighting, conflict, acrimony, and arguing over everything as the type of behavior that is having a negative effect on the children. Exley testified it is not healthy for children to witness conflict between parents because it could emotionally affect

them. Appellee stated that, since the divorce, D.P. has become more defiant, it is hard to get him to focus, and he is now getting into fights.

**{¶64}** Taking into consideration the various circumstances since the agreed entry, including the CPO against appellant, the relocation of appellant to a studio cottage, and the increased hostility between the parties, we find there is no abuse of discretion in the trial court's determination of a change in circumstances. Further, the record in this case supports the trial court's conclusion that substantial events have occurred that have or may have an adverse effect on D.D. and P.D. See *Wright v. Wright*, 5th Dist. Stark No. 2012CA00232, 2013-Ohio-4138. Appellant's second assignment of error is overruled.

III.

**{¶65}** In her third assignment of error, appellant contends the trial court erred and abused its discretion in weighing the best interest factors contained in R.C. 3109.04(F).

**{¶66}** If a change of circumstances is established, the trial court must weigh the best interest of the children before modifying a residential-parent designation. R.C 3109.04(F), which sets forth the factors a trial court must consider in determining the best interest of the child, provides:

In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:

(a) The wishes of the child's parents regarding the child's care;

(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

(d) The child's adjustment to the child's home, school, and community;

(e) The mental and physical health of all persons involved in the situation;

(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child * * *;

(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state.

**{¶67}** In this case, the magistrate set forth each factor contained in R.C 3109.04(F) and analyzed each of the factors with regards to the evidence and testimony provided in the case. Though appellant argues factors (b), (c), (e), (f), and (i) are unsupported by the evidence, upon review of the record in this case, we find there is competent and credible evidence to support the magistrate's conclusions with regard to these factors. While the trial court did not interview the children, the guardian ad litem did interview the children and provided the trial court with a recommendation and report.

**{¶68}** Appellee's testimony supports the magistrate's conclusion as to factor (c). Dr. Exley testified to the mental health of the parties as indicated in factor (e). As to factor (f), Frank testified appellee has a better chance of honoring, respecting, and facilitating the other parent's role. Appellee testified he is in counseling and intends to remain in counseling to deal with the communication issues between the parties. While appellant is in counseling, she testified she has not addressed any communication issues related to parenting. The magistrate determined that, pursuant to factor (i), there was not a denial of parenting time, but appellant insisted appellee pick up the children at places other than the court-ordered meeting place. Appellee testified appellant frequently asked him to change meeting places. Appellant, when asked why she frequently asked to change meeting places, she stated, "why not?" Frank and appellee testified to appellant's referring to appellee as "Mr. DiDonato" in front of the children.

**{¶69}** Though appellant provided contrary testimony to several of these factors, we defer to the trial court's interpretation and weight of the evidence as it observed first-hand witnesses and their demeanor. *Wright v. Wright*, 5th Dist. Stark No. 2012CA00232, 2013-Ohio-4138.

**{¶70}** We find no abuse of discretion in the trial court's conclusion it was in the best interest to name appellee the residential parent and legal custodian. The magistrate's decision thoroughly analyzed the factors and the findings were supported by the record. Appellant's third assignment of error is overruled.

IV.

**{¶71}** In her fourth assignment of error, appellant argues the trial court abused its discretion when it ruled on the motion for clarification of the July 22, 2015 judgment entry regarding sports and activities during the pendency of this appeal.

**{¶72}** It is a well-recognized principle that once an appeal has been perfected, the trial court loses jurisdiction over the matter, pending the outcome of the appeal. *Ritchey v. Plunkett*, 5th Dist. Stark No. 2013 CA 00105, 2013-Ohio-5695. However, a notice of appeal only divests the trial court of jurisdiction over that part of the final order, judgment, or decree which is sought to be reviewed. *Cramer v. Fairfield Med. Ctr.*, 5th Dist. Fairfield No. 2007 CA 62, 2008-Ohio-6706. The trial court continues to have jurisdiction during the pendency of an appeal so long as the exercise of that judgment does not interfere with the power of this Court to review the appealed judgment. *In re: Cletus P. McCauley & Mary McCauley Irrevocable Trust*, 5th Dist. Stark No. 2013 CA 00237, 2014-Ohio-3489.

**{¶73}** In this case, the appeal of the judgment entry divested the trial court of jurisdiction over the issue being appealed in this case, the granting of appellee's motion for reallocation of parental rights. The trial court retained jurisdiction to continue to hear matters not in conflict with this appeal of the motion for change of custody. See *Id.* We find the judgment entry on September 2, 2015, clarifying the July 22, 2015 judgment entry does not conflict with the issue appealed in this case.

**{¶74}** Accordingly, we find the trial court did not abuse its discretion in ruling on appellee's motion for clarification of the July 22, 2015 judgment entry regarding sports and activities. Appellant's fourth assignment of error is overruled.

V.

**{¶75}** In appellant's fifth assignment of error, she contends the trial court abused its discretion when it adopted the magistrate's decision which relied upon hearsay contained the report of the guardian ad litem.

**{¶76}** We first note that while appellant included this assignment of error on the "Table of Contents" page of her appellate brief, her appellate brief is devoid of any argument as to this assignment of error and it is not on the "Assignments of Error" page (page iv) or on the "Statement of Issues Presented" page (page v). However, it appears appellant attempts to make her argument regarding this assignment of error in her reply brief.

**{¶77}** A reply brief is not the place for briefing new arguments that were not included in appellant's merit brief. See App.R. 16(C); See also *State ex rel. Colvin v. Brunner*, 120 Ohio St.3d 110, 2008-Ohio-5041, 896 N.E.2d 979. Appellate Rule 16 provides that assignments of error shall be argued in the brief of appellant and a reply brief is to "reply to the brief of the appellee." Further, Appellate Rule 12(A)(2) states, the "court may disregard an assignment of error presented for review if the party raising it * * * fails to argue the assignment separately in the brief, as required under App.R. 16(A)." Here, by placing her assignment of error in the reply brief, appellee is denied the opportunity to respond to this assignment of error. Accordingly, we may properly decline

to address the argument raised for the first time in the reply brief. *CSAHA/UHHS-Canton, Inc. v. Aultman Health Found.*, 5th Dist. Stark No. 2010CA00303, 2012-Ohio-897.

**{¶78}** However, even if we were to consider appellant's fifth assignment of error, we find the trial court did not abuse its discretion in adopting the magistrate's decision. A trial court possesses broad discretion with respect to the admission of evidence and an appellate court will not disturb evidentiary rulings absent an abuse of discretion. *State v. Roberts*, 156 Ohio App.3d 352, 2004-Ohio-962, 805 N.E.2d 594 (9th Dist.). The role of a guardian ad litem is to advocate for the child's best interests and he or she is not aligned with any party on the legal issues presented. *In re Seitz*, 11th Dist. Trumbull No. 2002-T-0097, 2003-Ohio-5218.

**{¶79}** Frank testified concerning his reports that he authored throughout the pendency of the case. His conclusions were based upon his investigation over the course of the case, including talking with the children, the parents, family members, and other professionals. "Given the guardian's role and the requirements that she explain her investigation and the basis for her recommendation, her report and testimony may necessarily include information about what other people told her." *Sypherd v. Sypherd*, 9th Dist. Summit No. 25815, 2012-Ohio-2615; *Geary v. Geary*, 5th Dist. Delaware No. 14CAF050033, 2015-Ohio-259. These "out-of-court statements do not become inadmissible 'hearsay' however, unless they are offered in evidence to prove the truth of the matter asserted * * * an out-of-court statement offered simply to prove that the statement was made is not hearsay. *Id.*

**{¶80}** Upon review of Frank's testimony in this case, his statements were offered to prove that the statements were made and his conclusion was relevant to his

recommendations and findings. Further, any findings of fact or testimony by Frank that was offered to prove the truth of the matter asserted was also supported by the testimony of other witnesses. Accordingly, the trial court did not abuse its discretion in considering Frank's testimony.

{¶81} Appellant's fifth assignment of error is overruled.

{¶82} Based upon the foregoing, we overrule appellant's assignments of error. The judgment entries of the Tuscarawas County Court of Common Pleas are affirmed.


By Gwin, P.J.,

Wise, J., and

Delaney, J., concur