[Cite as *Murphy v. Murphy*, 2014-Ohio-4020.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| JESSICA MURPHY | JUDGES: |
| | Hon. William B. Hoffman, P. J. |
| Plaintiff-Appellee | Hon. Sheila G. Farmer, J. |
| | Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 2014 AP 01 0002 |
| JOSHUA P. MURPHY | |
| | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Civil Appeal from the Court of Common
                             Pleas, Domestic Relations Division, Case
                             No.  2009 TC 07 0349

JUDGMENT:                    Affirmed



DATE OF JUDGMENT ENTRY:      September 12, 2014



APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

JAMES J. ONG                              E. MARIE SEIBER
201 North Main Street                     Post Office Box 108
Uhrichsville, Ohio  44683                 Dennison, Ohio  44621

*Wise, J.*

{¶1}. Defendant-Appellant Joshua P. Murphy appeals the decision of the Court of Common Pleas, Tuscarawas County, which terminated a shared parenting plan and made other orders pertaining to his minor son. Plaintiff-Appellee Jessica Murphy is the child's mother and the former spouse of Appellant. The relevant facts leading to this appeal are as follows.

{¶2}. Appellant and appellee were married on April 7, 2006. One child, J.M., was born of the marriage in 2007.

{¶3}. Appellee filed a complaint for divorce in the trial court on July 31, 2009. On April 19, 2010, appellant and appellee entered into a written separation agreement and shared parenting agreement. The divorce was finalized on June 9, 2010.

{¶4}. On May 31, 2013, appellee filed a motion for reallocation of parental rights. On August 5, 2013, appellant filed a motion for contempt against appellee regarding visitation and medical notifications regarding J.M. The matter proceeded to an evidentiary hearing before a magistrate on August 9, 2013.

{¶5}. On August 22, 2013, the magistrate issued a four-page decision, recommending that no contempt finding be rendered and that the shared parenting plan "should be terminated, as the parties are unable to cooperate." *See* Magistrate's Decision at 3. The magistrate further recommended that appellant should have companionship with J.M. from Friday evening until Monday morning (at which time appellant would be responsible for taking the child to school), on the first, third, and fourth weekend of each month. *Id.*

{¶6}. Appellee filed her objection to the magistrate's decision on August 28, 2013. Appellant filed his objection to the magistrate's decision on September 3, 2013.

{¶7}. A hearing on the objections was conducted on October 28, 2013. The trial court, on December 26, 2013, issued a judgment entry adopting the magistrate's recommendation to terminate shared parenting. The court added language designating appellee as the residential parent and legal custodian, and ordered that appellant should have companionship pursuant to the court's standard parenting orders. The court also modified some of the magistrate's findings of fact and conclusions of law. In particular, the court found as follows regarding the issue of "change of circumstances":

{¶8}. "The Court concludes that a change of circumstances has occurred since the parties' shared parenting agreement was adopted, including the changes listed below. (1) The parties are unable to communicate with each other under the shared parenting plan, they avoid communication with each other, and do not fully share information regarding their child. (2) Joshua Murphy had previously indicated that he expected to be able to change his work schedule in order to be more available for the child, but that is not presently likely. (3) The child is now older and attends school."

{¶9}. Judgment Entry, December 26, 2013, at 3-4.

{¶10}. The trial court otherwise approved and adopted the magistrate's recommendations. *Id.* at 7.

{¶11}. On January 16, 2014, appellant filed a notice of appeal. He herein raises the following four Assignments of Error:

{¶12}. "I. THE TRIAL COURT ABUSED ITS DISCRETION IN DETERMINING THAT A CHANGE OF CIRCUMSTANCES OCCURRED AND IN TERMINATING THE SHARED PARENTING PLAN.

{¶13}. "II. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT SUSTAINED APPELLEE'S OBJECTION TO THE MAGISTRATE'S DECISION REGARDING APPELLANT'S VISITATION.

{¶14}. "III. THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT DID NOT FIND APPELLEE IN CONTEMPT OF ITS ORDERS WHEN SHE FAILED TO PROVIDE MEDICAL INFORMATION AS ORDERED.

{¶15}. "IV. THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT DID NOT FIND APPELLEE IN CONTEMPT FOR FAILING TO COMPLY WITH THE EXTENDED VACATION SCHEDULE."

I.

{¶16}. In his First Assignment of Error, appellant argues the trial court abused its discretion in determining that a change of circumstances had occurred and thereupon terminating the shared parenting plan regarding J.M. We disagree.

{¶17}. Our standard of review in assessing the disposition of child-custody matters is that of abuse of discretion. *Miller v. Miller* (1988), 37 Ohio St.3d 71, 73-74. An abuse of discretion connotes more than an error of law or judgment, it implies the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. Furthermore, as an appellate court reviewing evidence in custody matters, we do not function as fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine

whether there is relevant, competent and credible evidence upon which the fact finder could base his or her judgment. *See Dinger v. Dinger,* Stark App.No. 2001 CA00039, 2001-Ohio-1386.

{¶18}. R.C. 3109.04(E)(1)(a) reads in pertinent part as follows: "The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. * * *."

{¶19}. Furthermore, R.C. 3109.04(E)(2)(c) gives the court authority to terminate certain shared parenting plans upon the request of one or both of the parents or when it determines that shared parenting is no longer in the child or children's best interest. Although there is not unanimity among the various appellate districts in Ohio on the issue, this Court has taken the position that a trial court must consider the threshold question of "change of circumstances," as well as "best interest," in deciding a shared parenting termination issue. *See, e.g., Brocklehurst v. Duncan,* Muskingum App.No. CT10–0026, 2010–Ohio–5978, ¶ 19; *Oliver v. Arras,* Tuscarawas App.No. 2001 AP 11 0105, 2002–Ohio–1590.

{¶20}. R.C. 3109.04 does not define "change in circumstances." However, Ohio courts have held that the phrase is intended to denote "an event, occurrence, or situation which has a material and adverse effect upon a child." *See Rohrbaugh v. Rohrbaugh* (2000), 136 Ohio App.3d 599, 604-605, 737 N.E.2d 551, citing *Wyss v.*

*Wyss* (1982), 3 Ohio App.3d 412, 416, 445 N.E.2d 1153. "A trial court must carefully consider the nature, circumstances and effects of each purported change. Positive, laudable change, such as growth and improvement (expecting some measure of mistakes along the way) should be fostered rather than blindly chilled or penalized in the name of stability." *Hanley v. Hanley*, 4th Dist. Pickaway No. 97CA35, 1998 WL 372685.

{¶21}. In the case sub judice, as indicated in our recitation of facts, the trial court set forth three bases to support its finding that a change of circumstances had occurred following the adoption of the parties' shared parenting agreement: (1) The parties were experiencing communication and information-sharing problems with each other concerning the shared parenting plan; (2) appellant's plans to alter his work schedule in order to be more available for visitation time with J.M. was not coming to fruition; and (3) J.M. had reached school age.

{¶22}. We are quite confident that domestic relations judges are no strangers to poor communication between divorced spouses trying to move ahead with parenting their children. Appellant herein argues that the evidence in the case sub judice would establish "that communication problems existed from the time of separation, before the initial shared parenting agreement was incorporated as an order of the court." Appellant's Brief at 12. Appellant thus maintains that the parties' communication issues have not arisen since the prior decree, nor were they unknown to the trial court at the outset. *See* R.C. 3109.04(E)(1)(a), *supra.* However, what appears to have changed in this case is the willingness of appellant and appellee to jointly work out their longstanding communication problems in the name of saving the shared parenting

arrangement they presumably both wanted in the first place. As such, while the factors in this case involving appellant's work schedule and J.M.'s commencement of school may be more difficult to classify as having a material and adverse effect upon the child, we find no abuse of discretion in the trial court's determination that the parties' ongoing and unresolved issues with communication constituted a change of circumstances. *Cf. Green v. Richards*, 6th Dist. Wood No. WD-12-039, 2013-Ohio-406, ¶ 22 (affirming finding of change of circumstances and termination of a shared parenting plan where "the cooperative attitude essential to any such plan is lacking ***.")

**{¶23}.** Accordingly, appellant's First Assignment of Error is overruled.

II.

**{¶24}.** In his Second Assignment of Error, appellant argues the trial court erred in altering the magistrate's recommended companionship time by instituting the court's standard visitation order. We disagree.

**{¶25}.** Decisions on visitation lie within the trial court's sound discretion. *Day v. Day*, 5th Dist. Ashland No. 04 COA 74, 2005-Ohio-4343, ¶ 28 (additional citations omitted). *See, also, Quint v. Lomakoski,* 167 Ohio App.3d 124, 854 N.E.2d 225, 2006–Ohio–3041, ¶ 12.

**{¶26}.** Appellant points out that J.M. had enjoyed more than the standard visitation time with him for three years; however, because of appellant's work schedule, the standard visitation schedule would result in a limitation of visitation, as appellant is unable to have a midweek visit based on his schedule. Although the trial court did not discuss its rationale on this issue at length in its judgment entry, it appears the court concluded that a consistent weekday schedule, without adding alternative time to make

up for the unworkable midweek visit, would be in the child's best interest as he entered his school years.

**{¶27}.** Upon review, we hold the trial court did not abuse its discretion or commit reversible error in issuing its visitation schedule.

**{¶28}.** Appellant's Second Assignment of Error is therefore overruled.

### III., IV.

**{¶29}.** In his Third and Fourth Assignments of Error, which we will address together, appellant contends the trial court erred in failing to find appellee in contempt of court. We disagree.

**{¶30}.** Contempt has been defined as the disregard for judicial authority. *See State v. Flinn* (1982), 7 Ohio App.3d 294, 455 N.E.2d 691. "It is conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." *Windham Bank v. Tomaszczyk* (1971), 27 Ohio St.2d 55, 271 N.E.2d 815, paragraph one of the syllabus. Our standard of review regarding a finding of contempt is limited to a determination of whether the trial court abused its discretion. *Wadian v. Wadian,* Stark App.No. 2007CA00125, 2008–Ohio–5009, ¶ 12, citing *In re: Mittas* (Aug. 6, 1994), Stark App.No. 1994 CA 00053.

**{¶31}.** Interference with visitation is typically redressed in family courts via civil contempt. *See, e.g., Montgomery v. Montgomery,* Scioto App.Nos. 03CA2923, 03CA2925, 2004–Ohio–6926, ¶ 13, citing *Mascorro v. Mascorro* (Jun. 9, 2000), Montgomery App. No. 17945. "A finding of civil contempt does not require proof of purposeful, willing, or intentional violation of a trial court's prior order." *Townsend v.*

*Townsend,* Lawrence App. No. 08CA9, 2008–Ohio–6701, ¶ 27, citing *Pugh v. Pugh* (1984), 15 Ohio St.3d 136, 140, 472 N.E.2d 1085.

**{¶32}.** Appellant first contends that appellee should have been found in contempt of court for failing to notify him about the outcome of one of the child's medical appointments. We note the record does not indicate that any serious repercussions regarding the health and welfare of J.M. stemmed from appellee's disregard of the court's orders in this context. As an appellate court, we must be cognizant that a domestic relations court is often tasked with providing a forum for peaceable redress of disputes in the complex realm of post-decree litigation, and we must respect the discretion of such a court when it reasonably chooses to rein in its inherent contempt powers. In this instance, we hold the trial court could have properly found, within its discretion, that appellee's actions concerning the medical appointment notification had not risen to the level of disrespect, embarrassment, or obstruction toward the court's functioning so as to warrant a contempt finding. *Windham Bank, supra.*

**{¶33}.** Appellant secondly contends the trial court should have found appellee in contempt regarding extended vacation companionship time. The parenting orders in this matter, incorporated by reference, state in pertinent part:

**{¶34}.** "The non-residential/non-custodial parent shall be entitled to (6) weeks of extended vacation companionship each year, in addition to the other companionship provided herein. This extended vacation companionship must be exercised in minimum time periods of (2) weeks, and the nonresidential/non-custodial parent shall have the right to determine whether to exercise the extended vacation companionship in periods of (2), (4), or (6) weeks."

**{¶35}.** Parenting Orders, §E.

**{¶36}.** The trial court in this instance refrained from finding appellee in contempt where no court order existed in regard to *specific* summer visitation time. We are unpersuaded upon review that the court's decision was unreasonable, arbitrary, or unconscionable under the circumstances presented.

**{¶37}.** Accordingly, appellant's Third and Fourth Assignments of Error are overruled.

**{¶38}.** For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Tuscarawas County, Ohio, is hereby affirmed.

By: Wise, J.

Hoffman, P. J., and

Farmer, J., concur.

JWW/d 0822