[Cite as *Girdlestone v. Girdlestone*, 2016-Ohio-8073.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STEPHEN GIRDLESTONE | JUDGES:<br>Hon. William B. Hoffman, P. J. |
| Plaintiff-Appellant | Hon. W. Scott Gwin, J.<br>Hon. John W. Wise, J. |
| -vs- | |
| | Case No. 2016 CA 00019 |
| ABIGAIL GIRDLESTONE | |
| Defendant-Appellee | O P I N I O N |


CHARACTER OF PROCEEDING:      Civil Appeal from the Court of Common Pleas, Domestic Relations Division, Case No. 2012 DR 00567


JUDGMENT:      Affirmed


DATE OF JUDGMENT ENTRY:      December 5, 2016


APPEARANCES:

For Plaintiff-Appellant

DENISE K. HOUSTON
LAUREN A. GRIBBLE
TZANGAS PLAKAS MANNOS LTD.
220 Market Avenue South, 8th Floor
Canton, Ohio 44702

For Defendant-Appellee

STANLEY R. RUBIN
431 Market Avenue North
Canton, Ohio 44702

*Wise, J.*

**{¶1}** Plaintiff-Appellant Stephen Girdlestone appeals the decision of the Stark County Court of Common Pleas, Domestic Relations Division, which denied his post-decree motion to terminate or modify the shared parenting provision of the parties' 2013 divorce. Defendant-Appellee is Abigail Girdlestone, the former spouse. The relevant facts leading to this appeal are as follows.

**{¶2}** Appellant Stephen and Appellee Abigail were married in 2007. Four sons were born of the marriage: H.G., W.G., A.G., and J.G.

**{¶3}** On May 8, 2012, Appellant Stephen filed for divorce in the Stark County Court of Common Pleas, Domestic Relations Division. Appellee Abigail filed an answer and counterclaim on May 30, 2012.

**{¶4}** A final decree of divorce was issued on November 12, 2013. A *nunc pro tunc* judgment entry was issued on November 22, 2013. The terms of the divorce included a 50/50 shared parenting provision, which states as follows in pertinent part:

"[Appellant and appellee] hereby consent that they shall discuss and jointly agree on all significant and important matters related to the parties' children and in making important decisions regarding said children, subject to the exceptions set forth in the within Plan, with respect to which decision making authority rests with the Father. If the parties are unable to agree as to issues which are not subject to such exceptions, any such issue shall be submitted to mediation, through the guardian ad litem, Kristen Guardado, who shall remain continuously appointed in the within action ***."

**{¶5}** It appears undisputed Appellee Abigail did not comply with the shared parenting plan on a number of occasions, as further discussed *infra.* As a result, on May 26, 2015, appellant filed a motion asking the trial court to terminate shared parenting or, in the alternative, to modify the plan and/or designate him as the residential parent. On May 27, 2015, appellant additionally filed a motion to show cause, asking the court to hold appellee in contempt for her alleged lack of compliance with the shared parenting plan.

**{¶6}** A trial to the court was conducted on December 15 and 16, 2015. The trial court issued a thirteen-page judgment entry with findings of fact and conclusions of law on December 29, 2015.

**{¶7}** The trial court therein noted *inter alia* that the shared parenting plan was more specific concerning parental decision-making than most it had seen and was "heavily weighted in favor of the Father" in that regard. Judgment Entry at 10. However, the court found that appellee had violated aspects of the plan on numerous occasions, noting she had demonstrated "passive aggression or outright refusal to comply ***." *Id.* at 6. The court also observed that appellee had "shown an inability to cooperate with decisions made by [appellant] in this case." *Id.* at 12. Although the guardian ad litem, Attorney Kristen Guardado, presented her recommendation to terminate shared parenting and award custody of all four boys to appellant, the trial court decided to keep the plan in place and instead render a finding of appellee being in willful contempt of the court's divorce orders. However, the court suspended appellee's jail sentence for contempt on the condition of payment to appellant of $7,500.00 in attorney fees and future compliance with the court's orders. The trial court also warned her to remedy her "contentious conduct or face an outright termination of parental rights in the future." *Id.* at

13. It also ordered the parties to continue with counseling, and to use the court's online format for parental communication.

{¶8} Appellant filed a notice of appeal on January 26, 2016. He herein raises the following sole Assignment of Error:

{¶9} "I. TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO TERMINATE SHARED PARENTING AND AWARD CUSTODY TO FATHER OR, IN THE ALTERNATIVE, TO MODIFY THE PLAN WHEN MOTHER HAS DEMONSTRATED A PATTERN OF INFLEXIBILITY, DISREGARD OF HER PARENTING OBLIGATIONS, AND INATTENTION TO THE CHILDREN'S BEST INTERESTS."

I.

{¶10} In his sole Assignment of Error, appellant contends the trial court abused its discretion in declining to terminate or modify the parties' shared parenting plan concerning H.G., W.G., A.G., and J.G. We disagree.

*Standards of Review*

{¶11} In addressing a motion for the termination or modification of a shared parenting plan where the parents have ceased to mutually agree, a trial court must determine (1) whether a change in circumstances has occurred, (2) whether termination or modification is in the children's best interests, and (3) whether the advantage to the child resulting from the termination or modification outweighs any potential harm. *See Ford v. Ford*, 5th Dist. Tuscarawas No. 2012 AP 03 0025, 2012-Ohio-5454, ¶ 13.

{¶12} On appeal, our standard of review in assessing the disposition of child custody matters is that of abuse of discretion. *Miller v. Miller* (1988), 37 Ohio St.3d 71, 73–74. In order to find an abuse of that discretion, we must determine the trial court's

decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140. Furthermore, as an appellate court reviewing evidence in custody matters, we do not function as fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base his or her judgment. *See Dinger v. Dinger,* 5th Dist. Stark No. 2001CA00039, 2001–Ohio–1386. Because custody issues are some of the most difficult and agonizing decisions a trial judge must make, he or she must have wide latitude in considering all the evidence. *Davis v. Flickinger* (1997), 77 Ohio St.3d 415, 418, 674 N.E.2d 1159.

## *Change in Circumstances*

{¶13} R.C. 3109.04(E)(2)(c) gives the court authority to terminate certain shared parenting plans upon the request of one or both of the parents or when it determines that shared parenting is no longer in the child or children's best interest. Although there is not unanimity among the various appellate districts in Ohio on the issue, this Court has taken the position that a trial court must consider the threshold question of "change of circumstances," as well as "best interest," in deciding a shared parenting termination issue. *See, e.g., Brocklehurst v. Duncan,* 5th Dist. Muskingum No. CT10–0026, 2010–Ohio–5978, ¶ 19; *Oliver v. Arras,* 5th Dist. Tuscarawas No. 2001 AP 11 0105, 2002–Ohio–1590. We have also indicated a trial court's determination of parental "ongoing and unresolved issues with communication" may constitute a change of circumstances for modification of a shared parenting order. *Murphy v. Murphy*, 5th Dist. Tuscarawas No. 2014 AP 01 0002, 2014-Ohio-4020, ¶ 22.

**{¶14}** Appellant correctly notes that in the case *sub judice*, the trial court, in deciding not to terminate or modify shared parenting, made no explicit determinations regarding change in circumstances; appellant nonetheless maintains that "to whatever degree its holding was based on a finding that no change in circumstances has occurred, such a finding was unmistakably an abuse of discretion ***." Appellant's Brief at 24.

**{¶15}** However, under the circumstances presented, we find further discussion of the "change in circumstances" criterion would be merely academic or advisory.

<u>*Best Interest Factors*</u>

**{¶16}** R.C. 3109.04(F)(1) states as follows:

**{¶17}** "In determining the best interest of a child pursuant to this section, whether on an original decree allocating parental rights and responsibilities for the care of children or a modification of a decree allocating those rights and responsibilities, the court shall consider all relevant factors, including, but not limited to:

**{¶18}** "(a) The wishes of the child's parents regarding the child's care;

**{¶19}** "(b) If the court has interviewed the child in chambers pursuant to division (B) of this section regarding the child's wishes and concerns as to the allocation of parental rights and responsibilities concerning the child, the wishes and concerns of the child, as expressed to the court;

**{¶20}** "(c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;

**{¶21}** "(d) The child's adjustment to the child's home, school, and community;

**{¶22}** "(e) The mental and physical health of all persons involved in the situation;

**{¶23}** "(f) The parent more likely to honor and facilitate court-approved parenting time rights or visitation and companionship rights;

**{¶24}** "(g) Whether either parent has failed to make all child support payments, including all arrearages, that are required of that parent pursuant to a child support order under which that parent is an obligor;

**{¶25}** "(h) Whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of an adjudication; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to a violation of section 2919.25 of the Revised Code or a sexually oriented offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding; whether either parent or any member of the household of either parent previously has been convicted of or pleaded guilty to any offense involving a victim who at the time of the commission of the offense was a member of the family or household that is the subject of the current proceeding and caused physical harm to the victim in the commission of the offense; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;

**{¶26}** "(i) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

**{¶27}** "(j) Whether either parent has established a residence, or is planning to establish a residence, outside this state."

**{¶28}** Furthermore, R.C. 3109.04(F)(2) provides: "In determining whether shared parenting is in the best interest of the children, the court shall consider all relevant factors, including, but not limited to, the factors enumerated in division (F)(1) of this section, the factors enumerated in section 3119.23 of the Revised Code, and all of the following factors:

**{¶29}** "(a) The ability of the parents to cooperate and make decisions jointly, with respect to the children;

**{¶30}** "(b) The ability of each parent to encourage the sharing of love, affection, and contact between the child and the other parent;

**{¶31}** "(c) Any history of, or potential for, child abuse, spouse abuse, other domestic violence, or parental kidnapping by either parent;

**{¶32}** "(d) The geographic proximity of the parents to each other, as the proximity relates to the practical considerations of shared parenting;

**{¶33}** "(e) The recommendation of the guardian ad litem of the child, if the child has a guardian ad litem."

**{¶34}** We note that there is no requirement that a trial court separately address each best interest factor enumerated in R.C. 3109.04. *See In re Henthorn,* Belmont App. No. 00–BA–37, 2001–Ohio–3459. Absent evidence to the contrary, an appellate court will

presume the trial court considered all of the relevant factors listed in R.C. 3109.04(F)(1). *Id.,* citing *Evans v. Evans* (1995), 106 Ohio App.3d 673, 677, 666 N.E.2d 1176.

**{¶35}** In the case *sub judice*, three of the parties' four sons are school-age and are involved in various sports, religious, and scouting activities. The aforesaid shared parenting plan provided that the parties should try to agree which activities their sons would participate in, but if they could not, appellant would have the final say.[1] They made a similar agreement regarding medical care for the boys subject to certain provisions. The plan further required that the parent with physical custody of the children at the time was responsible for taking them to school, scheduled extracurricular activities, and medical appointments.

**{¶36}** The record reveals that appellee failed to comply with the plan on several fronts. These actions included taking one of the boys to a therapist and another to a pediatric dentist, in both cases without appellant's knowledge. Also, appellee at one point stopped giving allergy medication to the children, and she insisted that they try a homeopathic approach instead. Furthermore, appellee admitted that she had failed to fully oversee the boys' school homework during her parenting time. Tr. at 131, 187. Appellee also failed on numerous occasions to take the children to extracurricular and religious activities, as articulated in detail by appellant. *See* Appellant's Brief at 12-15, 20-21. The trial court was not persuaded by appellee's position that the boys were in too many activities, such as hockey team commitments. The court acknowledged that the activities, while frequent, were sufficiently "spaced out." Judgment Entry at 10-11.

---

[1] However, appellant, per the Plan, cannot allow the boys to participate in more than two activities at a time, exclusive of religious events and programs.

**{¶37}** We also note the guardian ad litem's recommendation in this instance was to terminate shared parenting and award custody of all four boys to appellant. In addition, the parties' high-conflict counselor had been frustrated with the lack of progress, although she recalled that the most recent session had gone much better. But it appears undisputed that despite appellee's obdurate parenting choices in certain areas, all four sons are currently healthy and generally doing well in school.[2]

**{¶38}** Ultimately, the trial court determined that "[i]f the Shared Parenting Plan that the parties entered into in 2013 were to be strictly followed with regard to communication and decision-making," it "would clearly be in the children's best interest to have as much contact with both parents as possible while addressing their physical, social, and emotional needs." Judgment Entry at 12-13. The court went on to find that a termination of the plan would be "premature and not in the children's best interest." *Id.* at 13. The court thus opted for a contempt finding as its preferred present remedy, warning appellee that she could be facing an "outright termination" of her parental rights if her conduct was not corrected. *Id.* at 13.

**{¶39}** It is axiomatic that in proceedings involving the custody and welfare of children, the power of the trial court to exercise discretion is peculiarly important. *See Thompson v. Thompson* (1987), 31 Ohio App.3d 254, 258, 511 N.E.2d 412, citing *Trickey v. Trickey* (1952), 158 Ohio St. 9, 13, 106 N.E.2d 772. Under the present circumstances, upon review, we find the trial court duly considered the statutory "best interest" factors,

---

[2] The youngest child was pre-school age at the time of the evidentiary hearing. It should also be noted that the oldest child has struggled with his social skills, possibly due to his parents' conflict.

and its decision to essentially invoke a wait-and-see approach to try to preserve the shared parenting order did not constitute an abuse of discretion.

*Harm/Advantage Weighing*

**{¶40}**  In addition to the issues of "change in circumstances" and whether a shared parenting modification is in the best interest of the child, a trial court must also consider whether the harm that will result from the change will be outweighed by the resultant benefits, pursuant to R.C. 3109.04(E)(1)(a)(iii). *See Oliver v. Arras, supra*.

**{¶41}**  In the case *sub judice*, the trial court did not reach this factor upon determining that termination of shared parenting would not be in the boys' best interest. As such, we find further discussion of this issue is presently moot.

*Conclusion*

**{¶42}**  Our review of the record thus does not indicate that appellate reversal under the circumstances presented would be warranted against the trial judge who observed the evidentiary proceedings firsthand.

**{¶43}** Appellant's sole Assignment of Error is therefore overruled.

**{¶44}** For the foregoing reasons, the judgment of the Court of Common Pleas, Domestic Relations Division, Stark County, Ohio, is hereby affirmed.

By: Wise, J.

Hoffman, P. J., and

Gwin, J., concur.

JWW/d 1116